## LOW et al. v. HENRY et al.

An attachment, issued before the issuance of the summons in the suit, is void, and the subsequent issuance of the summons cannot cure it.

Per Burnett, J.—A deed and defeasance, to constitute a mortgage, must be between the same parties.

Parol evidence is not admissible to show that a deed, absolute on its face, was intended as a mortgage, except in cases of fraud, accident, or mistake in the creation of the instrument itself.

In the absence of a mutuality of obligation, it must appear by apt and express words in the instruments, that it was the intention of the parties that the transaction should amount to a mortgage.

The judgment in an attachment-suit need not direct the sale of the property attached, as the law makes it the duty of the sheriff to sell it.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

A statement of the facts appears in the opinion of the Court.

*Stephen J. Field* for Appellant.

This is a suit in equity to perpetually enjoin the defendants from selling certain real estate situated in Marysville, belonging to the plaintiffs, under executions issued upon judgments recovered against Adams & Co. The judgments are entered up so as to be enforced against the joint property of Adams, Woods, and Haskell, and the separate property of Adams and Woods. Prac. Act., § 32; Shattuck *v.* Carson, 2 Cal., 589; Bank of U. S. *v.* Schulze, 2 Ohio, 471; Norton *v.* Curtis, 5 Hammond, 178; Pettite *v.* Shephard, 5 Paige, 501.

The plaintiffs deraign their title from Eaton and Babb, who owned the premises in question in February, 1853, when they sold and conveyed them to Haskell.

In May, 1854, Haskell executed a conveyance of the premises to Adams, which, though absolute on its face, was intended as

Low *v.* Henry.

security for $21,000, a sum then loaned by Adams to Haskell and his partner Woods, or which at the time they owed Adams, and took from Adams a bond of defeasance, or contract to convey the premises to Haskell and Woods upon the payment of $22,050, which is the sum loaned and interest to the day of payment. The deed and bond of defeasance were both recorded in the office of the recorder of Yuba County, the bond in the book called "miscellaneous records." These two instruments, the deed and bond, constitute a mortgage, at least it is so alleged in the complaint, and, for the purposes of the demurrer, the allegation must be taken as true. The fee, then, was in equity in Haskell, whilst Adams possessed a mere mortgagee's interest.

The plaintiffs have a conveyance of the fee from Haskell, and also an assignment of the bond of defeasance executed by Adams to Haskell and Woods, and a deed from Adams in pursuance of the condition of the bond; *i. e.*, they have in fact the mortgagor's title, with a discharge of the mortgage.

The defendants issued attachments against Adams, Haskell, and Woods, and attached their interest in the premises, and have recovered judgments in their attachment-suits which authorized a sale of the joint property of Adams, Haskell, and Woods, and the separate property of Adams and Woods. They have no judgment authorizing a sale of any individual property of Haskell. If, then, the premises in question were in fact the separate property of Haskell, the defendants have no right to proceed and sell the same.

The question then is, can a mortgagee's interest be attached in a suit, and, upon a recovery of a judgment, be sold on execution.

The defendants admitted, on the argument in the Court below, and it must, being alleged in the complaint, be taken as true for the purposes of the demurrer, that as between the parties Haskell and Adams, the latter had only a mortgagee's interest; but they contend that there was no authority for recording the bond of defeasance in the miscellaneous records, and therefore such record did not operate as notice, and, in consequence, their attachment against Adams holds the premises as though they were owned in fee-simple by him.

I am willing to admit, for the purposes of this argument, that there was no record of the bond of defeasance, and that the only record was the deed to Adams. There was no law in existence until 1855, authorizing the record of such a bond, and therefore, whether recorded or not, is of no consequence. But supposing there never had been any bond of defeasance, still the deed would be none the less a mortgage in equity, if given, as alleged in the complaint, as security for money loaned at the time or for a past indebtedness, and Adams' interest would still have been a mere mortgagee's interest.

Kent, in his Commentaries, vol. 4, p. 142, says: "A deed absolute on the face of it, and though registered as a deed, will be valid and effectual as a mortgage, as between the parties, if it was intended by them to be merely a security for a debt, and this would be the case though the defeasance was by an agreement resting in parol; for parol evidence is admissible in equity to show that an absolute deed was intended as a mortgage, and that the defeasance has been omitted or destroyed by fraud, surprise, or mistake."

Mr. Justice Story, in Taylor v. Luther, 2 Sumner Rep., 233, quotes the above passage from Kent with approbation, and adds:

"It is the same if it be omitted by design, upon mutual confidence between the parties; for the violation of such an agreement would be a fraud of the most flagrant kind, originating in an open breach of trust, against conscience and justice. I do not comment on the subject at large, because it seems to me wholly unnecessary, in the present state of the law, to do more than to enunciate the principles which govern cases of this nature, and which are as well established as any which govern any branch of our jurisprudence." Jennings v. Eldridge, 3 Story Rep., 293; Clark v. Henry, 2 Cowen, 332; Van Buren v. Olmstead, 5 Paige, 10; Lane v. Shears, 1 Wend., 437.

In Miller v. Thomas et al., 14 Ill., 431, Caton, J., of the Supreme Court of Illinois, says: "It is by no means necessary, in order to constitute a mortgage, that the deed and defeasance should be contained in the same instrument, or that they should even refer to each other. Their connection may be shown by parol. Indeed it is not absolutely necessary that the defeasance should be in writing at all. The conveyance may be absolute on its face, and yet it may be shown, by parol, that it was intended only as a security for the payment of money, when it will be treated in equity as a mortgage. These principles are too familiar to require authorities for their support."

In Miami Exporting Co. v. Bank U. S. et al., Wright's R., 252, the Supreme Court of Ohio says:

"It is now the acknowledged doctrine, that parol evidence is admissible against the face of a deed, to show that a mortgage only was intended. And whether a conveyance be a mortgage or not, is determined by its object. If given as a security, it is a mortgage, whatever be its form. This is so, whether the condition of defeasance form a part of the deed, is evidenced by other writing, or exists only in parol. The fact of its being given as security, determines its character, not the evidence by which the fact is established."

The parol evidence is admitted, not for the purpose of contradicting or varying the deed, but to show the real character of the transaction as one of loan, and not of purchase, and thereby establishing an equity which will control the operation of the

instrument.    Banks et al. *v.* Sprigg, 1 McLean, 183; Miami et al. *v.* Bank, Wright's Rep., 252.

The mistake the defendants make, is this: They consider the Registry Act intended to protect attaching-creditors, whereas it was only intended to protect subsequent purchasers and mortgagees in good faith, and for a valuable consideration.

The twenty-sixth section of the Act Concerning Conveyances reads as follows: "Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first recorded."

The protection of the Registry Act can not be invoked until a sale has been made or a mortgage given.    It in no way, directly or indirectly, applies to attaching-creditors previous to a sale under the judgment.    Had a sale taken place, and the defendants become purchasers, without any notice, actual or constructive, then they might have invoked the protection of the Registry Act.    They could then have said that they had parted with their money upon the faith of the Registry Act.    To prevent this very state of things, is the object of the present action.

Until a sale, the defendants have not lost anything.    They had no lien previous to the attachment; and if Adams possessed no attachable interest in the property, they acquired none by their attachment.    Rose *v.* Munie, 4 Cal., 173.

In reference to the deed and bond, we find: *first,* that they were both executed at the same time; *second,* that they were both witnessed by the same person; *third,* that they were both acknowledged before the same officer; *fourth,* that they both describe the same property, making the same mistake in the description in each instrument; *fifth,* that the bond provides for the payment of $22,050, on November 11, 1854, which is the same amount specified as the consideration of the deed, with interest added thereto, at ten per cent. a year, from date of deed, viz., six months; *sixth,* that both of the instruments were sent to C. B. Macy, and filed by him for record at the same hour; and *seventh,* the bond provides that until the conveyance is made to Haskell and Woods, they are to hold and use the premises without the payment of rent.

In Kerr *v.* Gilmore, 6 Watts Penn. Rep., 409, the Court in giving its opinion says: "When the deed and defeasance are of separate and different dates, they may amount to a mortgage, and nothing more; when they are of the same date and executed at the same meeting of the parties, before the same witnesses, they must be a mortgage, or there will be no more mortgages."

In the case at bar, the interest of six months is included in the gross amount to be paid; it is the same as if the

bond stated the original amount with interest.   One of the cir-
cumstances tending to show that a conveyance is intended as a
mortgage, is the possession of the premises by the grantor.   In
the present case, Haskell is the grantor, and the bond of Adams
provides that Haskell and Woods shall have the use of the prem-
ises without the payment of rent, until a conveyance is executed
to them by Adams.   It is hardly reasonable to suppose that Ad-
ams would allow the use of premises of the value of $21,000,
owned by him absolutely, without any charge.   Treating the
two instruments as together constituting a mortgage, and the
provision in the bond is at once explained.   Hilliard on Mort-
gages, vol. 1, 64.

The fact that the bond provides for a conveyance to Haskell
and Woods, instead of Haskell alone, can not affect the charac-
ter of the instruments.   When a deed is executed as security
for a debt, the grantor may provide by a separate instrument
that the re-conveyance be made to a third party, or back to him-
self, upon the payment of the debt.   In either case, the two in-
struments together constitute only a mortgage.   See Flagg v.
Mann et al., 2 Sumner, 540.

But supposing the bond of defeasance be laid entirely out of
consideration, still it may be possible for the plaintiffs to prove
either by parol, or by documentary evidence, the allegation in
their complaint, that the deed from Haskell to Adams was exe-
cuted as security for money loaned at the time, or for a past
debt.   The fact alleged is one that may be proved; whether the
plaintiffs will be able to make such proof, is another matter, but
if proved, it renders the deed, though absolute on its face, a
mortgage in equity.   The fact then being taken as true, by the
demurrer, it follows that the interest of Adams is to be treated
in the decision of this appeal as a mere mortgagee's interest.

If the views I have advanced be correct, the demurrer falls,
for if Adams was a mortagagee he had no interest in the prem-
ises which were the subject of attachment, or of sale, under exe-
cution, and the sale advertised by the defendants on the execu-
tions issued upon their judgments, if allowed to take place,
would only throw a cloud upon the title of the plaintiffs, and
subject them to vexatious, harassing and expensive litigation,
and from such sale the defendants should be perpetually en-
joined.   Smith v. People's Bank, 24 Maine, 185; Drake on At-
tachment, 229; Bryan v. Sharp, 4 Cal., 349.

*Charles Lindley* for Respondents.

1. The bond from Adams to Haskell and Woods does not im-
port to be connected with the deed, and form a part of the same
transaction, or contract.   In order to make different instruments
constitute one transaction, they must embrace the same subject,
and be between the same parties.   The consent or agreement of

each must extend to and run through each part of the contract so united. All the parties must enter into all the parts.

Adams and Haskell are parties to one branch—the deed; and Adams, Woods, and Haskell, are parties to the other branch—the bond. Woods is a stranger to the deed. How can he be connected with it? How can the two instruments be put together and make one transaction unless Woods is party to the deed?

The case of Treat v. Strickland, 23 Maine, 237, is precisely similar to the case at bar on the point of same parties; and the bond was held to be an executory contract to convey. In no case can the relation, or connection, be implied from coincident circumstances, when no reference is made in either instrument to the other—no recital that a deed has been executed; or that the grantor shall refund the purchase-money, with interest, or expenses, or some like words of reference and connection. In support of the argument on this point, the Court is respectfully referred to the fact of every case cited on either side upon the subject of defeasance, especially Kerr v. Gillman, 6 Watts., 405; Baker v. Thrasher, 4 Denio, 493.

2. Should the Court be of opinion that the two instruments constitute but one transaction, it must be a conditional sale;—a sale to Adams, with a right reserved to Haskell, with Woods, to purchase or re-purchase the estate, according to the terms of the bond. Baker v. Thrasher, 4 Denio, 493; Holmes v. Grant, 8 Paige, 254; Eckford's Executors v. DeKay, 6 Wend., 29; Glover v. Payn, 19 Wend., 518; Slee v. Manhattan Co., 1 Paine, 56; Goodman v. Greenan, 2 Ball and Beatty, 274; Conway v. Alexander, 7 Cranch, 237; Robinson v. Crapsey, 2 Edw., V. C., 138; Robinson v. Crapsey, 6 Paine, 480; Flagg v. Mann, 14 Pick., 467; Brown v. Dewey, 2 Barb. Ch., 28; Sumner, 534; 4 Kent, 8 Ed., 148, and note; Treat v. Strickland, 23 Maine, 237; Brown v. Dewey, 1 San. Ch., 56, cited as a leading case in notes to 4 Kent, 8 Ed., 146, is overruled in 2 Barb. Sup. Court, p. 28.

In Glover v. Payn, above cited, Bronson, J., held: "Judging from the papers themselves, this was simply a sale of land for a consideration paid at the time, with the agreement to re-sell at a future day at an advanced price, *the re-sale to depend upon the election of the original grantor.*" These words are italicised to show their applicability to the case at bar.

Chief Justice Marshall, in 7 Cranch, above cited, says: "To deny the power of two individuals, capable of contracting for themselves, to make a contract for the purchase and sale of lands, defeasible by the payment of money at a future day, would be to transfer to the Courts of Equity in a considerable degree, the guardianship of adults, as well as of minors."

The bond is not, *per se*, a defeasance, and consequently the transaction, taken together, is not a mortgage.

Jacobs' Law Dictionary, vol. 2, title "*Defeasance.*" "To make

a good defeasance, it must be, first, by deed, (in case of an endorsement, by deed poll,) for there can not be a defeasance of a deed without a deed.  Second, it must recite the deed it relates to, or at least the most material part thereof, or in case of endorsement, refer thereto.   Third, *it is to be made between the same parties that were parties to the first deed.*   Fourth, it must be made at the time or after the first deed, and not before.   Fifth, it ought to be made of a thing defeasible."   Just. 1, 236 ; 3 Ser., 234.

Judge Kent, in 4 Kent Com., (8 Ed.,) 144, speaks of defeasance as follows :

" The consideration upon which land is conveyed is usually inserted in the deed of conveyance, but the defeasance may be contained in a separate instrument.   And, if the deed be absolute in the first instance, and the defeasance be executed subsequently, it will relate back to the date of the principal deed, and connect itself with it, so as to render it a security in the nature of a mortgage."

The essence of the defeasance is that it defeats the principal deed.

If it is a mortgage, the equity of redemption is indispensable.  In whom does it exist ?   In Haskell ? or in Woods and Haskell?

Suppose the money, $22,050, had been paid to Adams on this contract with Woods and Haskell, would the deed from Haskell to Adams be void ?  be defeated ?  and the legal title revert at once to Haskell ?   No—for it is agreed that Adams shall make title to Woods ; and the deed from Haskell to Adams must remain valid and effectual, for upon it Adams is to make title to Woods.

After the payment of the money, the $22,050, on the contract to convey, could not Woods have had his action for a specific performance against Adams ?   Certainly.   Then, how can the title revert to Haskell ?   How can Haskell's deed be defeated by the payment of the money ?

Hence the rule that all the books lay down that the defeasance must be between the same parties who appear in the deed.

Could Haskell, as a mortgagor, redeem, so as to defeat Woods?  No.   See the several cases above cited.   The proposition contended for is too apparent, from the face of the papers, to need further argument.

3.  The case must be determined from the bond and deed alone, for the allegations in the complaint show no defeasance other than the one set forth, namely, the bond.

From the allegations in the complaint, it is clear the question must be determined upon the deed and bond, exclusive of the preceding general allegations, which are made in view of, and introductory to, the specific showing of the bond as a defeasance.

Such is the fair import and construction of the complaint, and the apparent intention of the pleader.   The appellants' counsel

proposes, in his argument, to leave the bond out of the consideration of the case, and to look to the general allegations that the deed was given as security, treating these allegations as a sufficient foundation for showing defeasance other. than the bond.

Reserving, for the present, the question whether a parol defeasance of an absolute deed may be shown in cases free from actual fraud, it seems clear that when such defeasance, or contract claimed as a defeasance, is reduced to writing, and shows that all the allegations, contravening the legal import of such writing, are futile, there is no foundation for proof, especially where such allegations are not directed to the defeasance, but to the deed. There is no case, rule, or *dictum,* which allows a written instrument, claimed as a defeasance, to be varied, contradicted, or impeached, unless there be actual fraud or mistake in its execution; and then, such facts must be fully pleaded of and concerning such defeasance, and not of the deed. Possibly, an absolute deed may be defeated by parol, but a deed, claimed as a defeasance, can not be. It is alleged that the deed was given as a security, and not that the bond was given as a defeasance to the deed, but that the bond *per se* operates as a defeasance.

If they claim, *ore tenus,* that the defeasance was in parol, they show in the complaint that it was in writing, or that a writing was executed at the time embracing the subject-matter, and it must be conclusive.

There must be some point beyond which Courts of Equity will not go, in overthrowing the Statute of Frauds and the certainty and security of written instruments.

The bond confirms the absolute estate in Adams. Haskell is estopped from setting up an equity of redemption, by accepting from Adams the bond to convey to Woods and Haskell, containing, in terms, a lease to them of the premises till the eleventh of November, 1854. Murphy *v.* Barnett, 1 Law Rep., 106; 5 Hammond, 194; 7 Hammond, 227; Harr. Ch., (Del.) 414; 6 Hammond, 87; 1 Greenl., §§ 22, 24, 211; 2 Cal. Rep., 558.

The true test of the question is this : Could Adams have set up, as a defence to an action by Woods, for specific performance, the fact that the deed was a mortgage, the bond a defeasance, and that the property reverted to Haskell on the payment of the $22,050 ? If the deed be a mortgage, then Haskell's right of redemption is an inseparable incident. 1 Greenl. Cruise and Dig., tit. 15, cap. 1, § 21. What becomes of Woods' interest in the contract ? Who is to release Adams from his bond to Woods ? Woods has no remedy against Haskell, for he has no contract in writing for the conveyance of the land from Haskell.

4. Should the Court be of opinion that the appellants are not concluded by their showing of the bond, in. the manner set forth, and that the complaint can be considered independent of the

bond, with a view of showing other defeasance, then there are two insurmountable objections to its sufficiency.

By the sixth section of our Statute concerning Fraudulent Conveyances, Comp. Stat., p. 200, " No estate or interest in lands, nor any power or trust over or concerning lands, or in any manner relating thereto, shall be created, except by writing, or operation of law." Lee v. Evans, Oct. Term, 1857. The words " in any manner relating thereto," are intended to cut off all parol transactions. This language is stronger than, and unlike that of, any other statute.

Upon this subject, see the English Statute, quoted in 2d Story Equity Ju., fol. 70.

Whenever Courts of Equity, yielding to views of apparent oppression in individual cases, have made exceptions to the old statute, the sober, settled judgment of jurists has disapproved them; and not unfrequently is legislation invoked to remedy the evil.

The peculiar phraseology of our statute was intended to cut off all equitable mortgages. It*is submitted, that at least under our statute, and in view of the policy of upholding it, the defeasance must be in writing, unless there be fraud or mistake in the execution of the deed. If this position be correct, then it follows that the complaint is insufficient, (considered independent of the bond,) in this, that it does not allege any other defeasance in writing. Not only does the Statute of Frauds require this, but the familiar rule of law, that a written contract can not be varied by parol, except in cases of fraud, accident, mistake, or surprise, requires that any variation, or contradiction, of such contract, other than for the causes above named, must be in writing. Kelly v. Bryan, 6 Ired. Eq., 283; 1 John Ch. Rep., 429; 1 Hill, 606; 6 Hill, 219; 1 Greenl. Ev., §§ 275, 278; 2 Story Eq., Jur., § 1531; 2 Starkies' Ev., pp. 544, 577; Thomas v. McCormick, 9 Dana, 108; Woodard v. Fitzpatrick, 9 Dana, 118.

As to the specific question whether a clear, absolute deed can be defeated by secret agreement, in parol, in cases free from actual fraud in the execution, there being no collateral agreement in writing referring to the deed, we answer confidently, no; and the facts of every case examined confirm the answer, although, in some cases, there may be dicta which, at first, appear to be the reverse.

The true rule, carefully drawn from all the cases, appears to be this: Where there is an ambiguity, patent upon the face of the instrument, or upon the face of an absolute deed, considered in connection with, and as part of, other instruments between the same parties, and as part of the same transaction; then, upon sufficient allegations, a parol-showing to explain such ambiguity, may be made, and in cases of great doubt, as to what was the intention, the transaction should be considered as a mortgage.

All other parol-showing must be referred to the head of actual fraud, surprise, or mistake.   Lee *v.* Evans, 8 Cal., 424.

BURNETT, J.—This was a bill to restrain the sale of certain premises on executions issued out of the District Court.   The defendants demurred to the complaint; the demurrer was sustained, and the plaintiffs appealed.   The facts alleged in the complaint were, concisely, these :

1. On the eleventh of May, 1854, Daniel H. Haskell conveyed the premises in dispute, by deed, to Alvin Adams, which deed was recorded May 16, 1854.   This deed was absolute on its face, and recites a consideration of $21,000.

2. Upon the same day, Alvin Adams executed his bond to Daniel H. Haskell and Isaiah C. Woods, in which he binds himself to do two things—*provided* said Woods and Haskell should pay him the sum of $22,050, on or before the eleventh day of November, 1854—namely : *first,* to convey to them the same premises by warranty-deed ; *second,* to permit them, in the meantime, to occupy the premises free of rent.

3. That Haskell conveyed the premises to plaintiffs August 9, 1855, which deed was recorded September 1, 1855 ; and that plaintiffs then took possession of the premises, and have always had possession since that time.

4. That on the ninth of August, 1855, said Woods and Haskell assigned the bond of Adams to the plaintiffs, which assignment was recorded September 6, 1855.

5. That Alvin Adams, by deed delivered August 28, 1855, conveyed the premises to plaintiffs, which deed was recorded Aug. 31, 1855.

6. That defendant Henry, on the twenty-sixth day of May, 1855, sued Adams & Co., and attached the premises in controversy ; that the attachment was issued before the summons ; that judgment was had September 3, 1855, for $5,907 69, to be enforced against the joint property of all the defendants and the individual property of Woods ; that afterwards proceedings were had, whereby, on the thirteenth of May, 1856, it was adjudged that the judgment be enforced against the separate property of Adams.

7. That the defendant Kinder sued Adams & Co. June 2, 1855, attached the premises June 4, 1855, and obtained judgment January 23, 1856, for $3,341 60, so that it might be enforced against the joint property of all the defendants, and the separate property of Woods and Adams.

8. That Philip Schover sued Adams & Co., and attached the property June 20, 1855, and obtained judgment January 23, 1856, for $2,940 25, so that it might be enforced against the joint property of all, and the separate property of Woods and Adams.

9. That defendant Young sued Adams & Co. June 26, 1855, and

attached the property and obtained judgment March 19, 1856, for $996 50, so that it might be enforced against the joint property of all, and the separate property of Wood and Adams.

10. That executions have been issued upon these four judgments, and delivered to the sheriff, who has levied upon the property and advertised the same for sale.

Conceding that the title to the premises in controversy was in plaintiffs at the date of the levy of the several executions, there can be no question as to their right to restrain the sale. (5 Page, 493; 5 Hammond, O. R., 178; 2 Ohio R., 471.) It is equally clear that if the title was in Adams & Co., or in Adams, at the time the attachment was levied, the complaint could not be sustained, unless the liens of the attachment were subsequently lost.

There are three questions involved in the case:

1. Whether the transaction amounted to a mortgage or a conditional sale.

2. Whether the liens of the attachments were lost in consequence of the form in which the judgments were taken.

3. Whether the attachment in the case of Henry v. Adams & Co. was void.

In the case of Lee v. Evans, decided at the October Term, 1857, we held that parol evidence was not admissible to show that a deed, absolute upon its face, was intended as a mortgage, without alleging and proving fraud, accident, or mistake, in the creation of the instrument itself. That case was well considered; and we have since seen no reason to change our opinion. In considering the first question, we must, therefore, collect the intention of Adams, Woods, and Haskell, from what they have deliberately stated in the written instruments, and hold them to have meant what they said.

It is insisted by the learned counsel of plaintiffs, that the deed from Haskell to Adams, and the bond from Adams to Woods and Haskell, constituted but parts of the same instrument, and must be taken and construed together; and that when so construed they amount to a mortgage, and no more. These instruments be .r date the same day, were witnessed by the same person, acknowledged before the same officer, intrusted to a mutual agent, and describe the same property. When two instruments are executed at the same time, between the same parties, and about the same subject-matter, they may be considered as constituting parts of the same transaction. But in this case there is no reference in either instrument to the other; and they are between different parties. We think, however, though we do not expressly so decide, that the coincidences stated show that the deed and bond should be taken and construed together as parts of the same transaction.

But if we consider the deed and bond as constituting together

but one instrument, it is difficult to see how they can be construed to be a mortgage. The deed purports to be absolute upon its face. The bond is also clear and explicit. Nothing is said in either about a loan of money, or a pre-existing debt, or the payment of interest. It is true that the difference between the sum mentioned in the deed, and that stated in the bond, was $1,050; and that this sum amounts to just ten per centum per annum upon the $21,000—for the period elapsing between the date of the deed and the day when the $22,050 were to have been paid. But this coincidence is slight, and is overcome by the express covenant of the bond, that Adams was to charge no *rent* during that period. The increased sum was in lieu of rent.

The deed and bond were between *different parties;* and we know of no case were it has ever been held that such a transaction could be a mortgage. On the contrary, it was held in the the case of Treat *v.* Strickland, (23 Maine Rep., 234,) that if land be conveyed, and at the same time a bond be given by the grantee to the grantor, and another to convey to them the same premises upon certain conditions, the instruments do not constitute a mortgage. A defeasance is "an instrument which defeats the force or operation of some other deed or estate. That which in the same deed is called a condition, in another deed is a defeasance." (Bouvier.) Had the clear intention of the parties, as expressed in the deed and bond, been fully carried out, the deed to Adams would not have been thereby defeated, and the property re-vested in Haskell, the maker of the deed; but the title would have passed from Adams to Haskell and Woods. The bond could not constitute a defeasance to the deed, for the reason that they must be between the same parties. (14 Pick., 479, and authorities there cited. 2 Blackstone, 327, 342.)

The bond of Adams, which is set out in full in the complaint, clearly treats Adams as the owner of the premises. He stipulated under a penalty of $44,000, that he would, "upon *tender*" to him of a sum, at a place, and on or before a time *specified,* convey to Woods and Haskell the premises described, without any charge of *rent.* The legal effect of the instrument is, that if the money was not *tendered* at the time and place mentioned, then Adams was not bound to convey, and would, therefore, have had the right to charge a reasonable rent. No rent was to be charged by Adams; *provided* the money was tendered at the place and time mentioned.

In the case of Conway's Executor *v* Alexander, 7 Cranch, 237, it was said by Chief Justice Marshall: "In this case the form of the deed is not, in itself, conclusive either way. The want of a covenant to repay the money is not complete evidence that a conditional sale was intended, but is a circumstance of no inconsiderable importance."

It will be seen, that the Court there lay down the rule, that

"the want of a covenant to repay the money" is not conclusive of the intention of the parties. This position was laid down under the practice which permitted *parol* testimony to prove that a deed absolute upon its face, was intended as a mortgage. But while the *form* of the deed was not held as conclusive evidence of the intention of the parties, the Chief Justice said: "It is, therefore, a necessary ingredient in a mortgage, that the mortgagee should have a remedy against the person of the debtor. If this remedy really exists, its not being reserved in terms will not effect the case. But it must exist in order to justify a construction which overrules the express words of the instrument."

In the case of Goodman *v.* Grierson, 2 Ball & Beatty's Rep., 279, it was said, by Lord Manners: "The fair criterion by which the Court is to decide whether this deed be a mortgage or not, I apprehend to be this: are the remedies mutual and reciprocal? Has the defendant all the remedies a mortgagee is entitled to?"

In the case of Flagg *v.* Mann, (14 Pick., 478,) it was held, that when there was no collateral undertaking to pay the money, that "this fact, though not conclusive, is to be taken into consideration in ascertaining whether the transaction was a mortgage or a sale, with a contract for a re-purchase upon strict terms."

It must be conceded that Lord Manners did not intend to lay it down as an inflexible rule, that mutuality must exist to constitute a mortgage; but only that it was a fair criterion by which to ascertain the intention of the parties. (1 Sand., 73.) And there would seem to be no doubt of the competency of parties to create a mortgage without this mutuality. For example, A might mortgage certain premises to B, to secure the payment of a specified sum, with the distinct understanding that B should look *alone* to the property for his security; but in case the mortgaged premises should sell for more than the debt, then the surplus to be the property of A. But in such a case, the intention of the parties should be expressed in clear and apt words, before a Court would give the instrument such a construction.

Neither in the deed of Haskell to Adams, nor in the bond of Adams to Woods and Haskell, is there a word to show any obligation on the part of Woods and Haskell to pay the sum specified in the deed or in the bond. We can find nothing making it their duty to pay the money. It is only stipulated, that if they did so *tender* it at the time and place mentioned, then Adams would do the two things stipulated by him to be done. There being no mutuality between the parties, and no apt and express words in the instruments, either taken together or singly, to show that the transaction amounted to a mortgage, and no parol testimony being admissible to prove it such, one must conclude

that it was not a mortgage. And for the same reasons we are led to the conclusion that it was not an ordinary sale of land, where one party stipulates to pay the purchase-money and the other to convey the premises when the payment is made ; but it was a sale in the nature of a conditional sale; and when the money was not tendered as specified, the premises remained the property of Adams, discharged from the covenants in the bond. (4 Kent, 148 ; 4 Denio, 493 ; 14 Pick., 467 ; 19 Wend., 518 ; 2 Ed. Ch. R., 138 ; 8 Paige, 243.) As such, it was liable for his debts and subject to the attachments issued in the cases stated.

It is urged by the learned counsel of plaintiffs, that, though the bond of defeasance be laid out of the question, still the demurrer should have been overruled, as plaintiffs might have been able, under their general allegation that the transaction was intended as a mortgage, to prove it such by other testimony. But this ground is not well taken. They had first shown the title in Adams by deed absolute, and they only alleged the bond as a defeasance. Their general allegation was limited and controlled by the particular allegation that followed. When a pleader assumes to set out the particulars of his case, he must be held to have done so.

We come now to consider the question as to whether the liens of the attachments were lost in consequence of the form in which the judgments were taken. The counsel of plaintiffs insist that the liens were lost " by the fact that simple money-judgments were entered up, without any directions for the sale of the attached property." The learned counsel go on to say : " Suppose a party should, on a suit to foreclose a mortgage, take judgment simply for the amount due ; he could not, under *such a judgment*, proceed to sell the mortgaged premises so as to transfer the title from the date of the mortgage."

In a foreclosure suit, one of the objects of the bill is to enforce a prior lien created by contract ; and the decree of sale is a part of the relief prayed for in the complaint itself. The sale of the mortgaged premises, as such, only follows the express decree of the Court foreclosing the equity of redemption. (Code, § 246.) There are no directions given to the sheriff as to sales made under decrees of foreclosure, for the reason, that such sales are made under the directions of the Court, and not under execution.

But the case is different where property is attached as security for the judgment that may be thereafter recovered. There is no prayer in the complaint that the Court should order a sale of the attached property. The lien of the attachment arises after the commencement of the suit. The Code contains express directions to the sheriff as to property attached. (§§ 130, 132, 133.) He is directed to sell the property, if it be perishable, and to retain the proceeds to answer the judgment. There is nothing in

the Code that requires any order of Court to authorize a sale. For these reasons, we think the objection not well taken.

The third and last point necessary to be examined is the question, whether the attachment issued in the case of Henry v. Adams & Co., as alleged in the complaint, was a nullity. The twenty-second section of the Practice Act provides that a suit shall be commenced by the filing of a complaint and the issuance of a summons; and the one hundred and twentieth section allows the plaintiff, "at the time of issuing the summons, or at any time afterwards," to have the property of the defendants attached. These provisions must be strictly followed; and the attachment, if issued before the summons, is a nullity. (Ex Parte Cohen, 6 Cal. R., 318.) The issuance of the summons afterwards can not cure that which was void from the beginning. If we regard the attachment as void, there was no lien held by Henry upon the property at the date of the deeds to plaintiffs. The demurrer was to the whole complaint, and should have been sustained as to part, and overruled as to the residue.

It is but just to remark that the bill was framed before the decision in the case of Lee v. Evans, and that consequently many of the authorities referred to by counsel have no application to the case.

The judgment of the Court below is reversed, and the cause remanded, with liberty to the plaintiffs to amend.

TERRY, C. J.—I concur in the judgment on the third point mentioned in the opinion of my associate; upon the other points I express no opinion.