[Sac. No. 703. Department One.—April 4, 1900.]

MARY WOODARD, Executrix, etc., Appellant, v. GEORGE T. HENNEGAN, Respondent.

VENDOR AND PURCHASER—DEED TO PERSON ADVANCING PURCHASE MONEY —MORTGAGE—TRUST.—Where the defendant in an action to quiet title purchased land the purchase money of which was advanced by plaintiff's testator, to whom the legal title was conveyed by the grantor in trust for the defendant in possession, and as security for the repayment by him of the purchase money so advanced, the transaction is more than a mortgage; and the grantee holds a double relation to the purchaser, both

as his trustee of the legal title to the land, and as his mortgagee for the money advanced for its purchase.

ID.—RIGHTS OF GRANTEE—VENDOR RETAINING TITLE AS SECURITY.—The rights of the grantee and of his executor will be regarded the same as if the grantee holding the legal title in trust as security had been the original owner of the legal title, and had made an executory contract of sale to the defendant, retaining the title as security for the purchase money.

ID.—RIGHTS OF PURCHASER IN POSSESSION—ENFORCEMENT OF CONTRACT CONDITIONED ON COMPLIANCE.—The purchaser in possession has the right, by complying with the contract, to procure the title, and he may come into court setting up · his rights under the contract, and offering to pay the balance due on the purchase price, and may enforce the contract and compel a conveyance; but he cannot demand the conveyance until he has paid the money advanced for its purchase.

ID.—REPUDIATION OF CONTRACT—RECOVERY OF POSSESSION BY EXECUTOR OF GRANTEE.—The purchaser will not be allowed to retain the possession of the property, and repudiate the contract under which he obtained the possession, nor to affirm the contract so far as he deems it beneficial, and repudiate its burdens. If, in an action by the executor of the grantee to quiet title and to recover possession of the property, the defendant by his answer repudiates the contract, and has refused to pay the balance due, the plaintiff may maintain the action and recover possession of the property.

ID.—ADVERSE POSSESSION—ESTOPPEL OF PURCHASER—PAYMENT OF TAXES BY GRANTEE.—While the defendant was occupying under the contract of purchase, and making payments of interest to the grantee of the legal title, he held in subordination to that title, and was estopped to deny the title of the grantee; and he could not acquire adverse possession, so long as all taxes upon the land were paid by the grantee.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

E. B. Mering, and Hart & Cleary, for Appellant.

The defendant had no title and his possession was not adverse, but in subordination to the title of Woodard, who paid all the taxes. (Code Civ. Proc., secs. 321-25; Angell on Limitations, secs. 384, 390; *Ricard v. Williams*, 7 Wheat. 59, 112; *Farish v. Coon*, 40 Cal. 33; *Unger v. Mooney*, 63 Cal. 586;

*Mauldin v. Cox,* 67 Cal. 387; *Thompson v. Felton,* 54 Cal. 547; *Pearson v. Creed,* 78 Cal. 146, 147; *Tuffree v. Polhemus,* 108 Cal. 675, 676; *McDonald v. McCoy,* 121 Cal. 73.) Under the answer repudiating any contract, and relying upon the statute of limitations, the defendant cannot rely upon any equitable rights under his executory contract, which must be fully pleaded with an offer of performance, to be relied upon. (*Goodale v. West,* 5 Cal. 339; *Frixen v. Castro,* 58 Cal. 442; *Weber v. Marshall,* 19 Cal. 447; *Ballard v. Carr,* 48 Cal. 75; *Aurrecoechea v. Sinclair,* 60 Cal. 545; *Stratton v. California etc. Co.,* 86 Cal. 353.) And he can only stand on his answer upon his strictly legal rights. (*Conrad v. Lindley,* 2 Cal. 173.) Woodard held the legal title in trust as security for the purchase money advanced, and the defendant could not obtain it except by payment. (*Campbell v. Freeman,* 99 Cal. 546-48; *Longmaid v. Coulter,* 123 Cal. 208.)

Charles W. Thomas, for Respondent.

The possession of the defendant was evidence of a fee. (*McGovern v. Mowry,* 91 Cal. 383, 385.) The Lowe and Merkeley deeds were mortgages, securing a debt, which did pass title or right of possession to the mortgagee. (Civ. Code, sec. 2924; *People's Sav. Bank v. Jones,* 114 Cal. 422, 426; *Works v. Merritt,* 105 Cal. 467, 469; *Farmer v. Grose,* 42 Cal. 169; *Malone v. Roy,* 94 Cal. 346; *Montgomery v. Spect,* 55 Cal. 352; *Peugh v. Davis,* 96 U. S. 332; *Vance v. Anderson,* 113 Cal. 538; *Jackson v. Lodge,* 36 Cal. 42, 43; *Locke v. Moulton,* 108 Cal. 52.) Payment or offer of payment is not a condition of the right to defend. (*San Jose Bank v. Bank of Madera,* 121 Cal. 539, 542.)

THE COURT.—The complaint in this case alleges that G. W. Woodard, deceased, was during his lifetime, and that plaintiff, as executrix, was at the commencement of this action, the owner in fee and entitled to the possession of section 12, in township 10 north, range 2 east, Mt. Diablo base and meridian. That the defendant was at the time of the commencement of the action in possession thereof, claiming an interest or estate therein adverse to the plaintiff, which claim is alleged

to be without right.  Judgment is prayed for the recovery of the possession of the land, and that plaintiff's title be quieted as against defendant.

The answer denies that Woodard, deceased, ever was, or that plaintiff as executrix ever was, the owner or seised in fee of the said lands, or any part thereof.  Denies that Woodard, deceased, ever had, or that plaintiff ever had any interest in said land, or that they or either of them were ever entitled to the possession thereof.  Admits that defendant is in possession of the lands, but alleges that he is in possession as owner thereof.  Defendant further alleges that the plaintiff has not, nor has her ancestors or predecessors in interest, been seised or possessed of the property within five years before the commencement of the action.  By way of cross-complaint, he alleges that he has been in the adverse possession of said land for more than five years before the commencement of the action, that he is the owner in fee simple, and that plaintiff claims an interest or estate in said land adverse to him, which claim is without right.  He asks that it may be adjudged that he is the owner in fee simple and that his title may be quieted against plaintiff.

A jury was called for the trial of the case and fifty-eight special issues submitted to it for determination.  After the jury returned its verdict answering the fifty-eight interrogatories, the court, by consent of the parties, filed findings.  It found that G. W. Woodard, deceased, was not during his lifetime, or at all, the owner or seised in fee of the said lands, and that the plaintiff as executrix is not the owner nor entitled to the possession thereof.  The court further found:

"4. Finds that it is true that the defendant Hennegan is in possession of the lands herein described, and claims an estate and interest therein adverse to plaintiff, and that defendant was, at the commencement of said action, and now is, the owner in fee simple of said lands, and entitled to and was at the commencement of said action, and now is, in the possession thereof."

"6. The court further finds that the defendant Hennegan, on or about the eighth day of August, 1882, purchased the south half of said section 12 of one E. R. Lowe, and at once

entered into the possession thereof, and then and there be-
came the owner in fee simple thereof; that on or about the
twenty-fourth day of February, 1889, the defendant purchased
of one R. J. Merkeley the north half of said section 12, and
at once entered into the possession thereof, and then and there
became the owner in fee simple of said lands; that ever since
said respective dates the defendant has been in the open, con-
tinuous, notorious, and adverse possession of said land; that he
has occupied, cultivated, and inclosed said land with a sub-
stantial fence, and used the same as aforesaid for farming and
agricultural purposes; that said G. W. Woodard, deceased, has
never been the owner of said land, or any part thereof, and
was never entitled to the possession thereof; that the heirs of
said G. W. Woodard have never been, and are not now, the
owners of said lands, nor entitled to the possession of the same
or any part thereof; that the plaintiff herein has never been
the owner of said lands, and is not now the owner thereof,
and is not entitled to the possession of the same."

As conclusions of law, the court found that defendant is and
was at the time of the commencement of the action the owner,
seised in fee, in the possession and entitled to the possession
of the said land.   That plaintiff take nothing by her action,
and that the defendant recover his costs.   Judgment was ac-
cordingly entered.   A motion was made for a new trial and
denied, and this appeal is from the judgment and order.   It
is claimed that the findings of the court in favor of defendant
are not supported by the evidence and that the conclusions of
the court and the judgment are against law.   The substantial
facts, concerning which there is little conflict, are as follows:
G. W. Woodard, deceased, and defendant lived in the same
neighborhood and became acquainted about 1879.   They had
some business transactions of a friendly nature in 1880.   De-
fendant borrowed money from Woodard in the spring of 1881
for the purpose of buying seed and carrying on his farming
business.   This money was repaid.   In the spring of 1882 the
defendant told Woodard that he wanted to buy the south half
of section 12 from one Lowe.   After some negotiations, Wood-
ard furnished the money, six thousand dollars, with which
Lowe was paid, and the deed to the land was made to Woodard

on August 8, 1882. Defendant at once entered into possession of the land and has ever since remained in possession. Defendant did not give Woodard a note, but paid interest on the six thousand dollars thereafter at the rate of eight per cent per annum, that being the rate agreed upon by the parties. After the purchase of the land from Lowe the defendant became the owner of an interest in some three hundred and twenty acres of land which was purchased of one Gallup, the other interest being owned by Woodard. Early in 1889 defendant sold to Woodard his interest in the Gallup land for three thousand dollars, which amount was credited to defendant on the Lowe purchase. On May 31, 1889, the defendant bargained for the north half of said section from one Merkeley. Woodard furnished the purchase price, eight thousand dollars, and took this deed in his name. No note was given, and the agreement was that defendant should pay Woodard interest on this sum at the rate of eight per cent per annum. Defendant went into possession and has ever since remained in possession of the said land. On June 1, 1889, the entire section stood in the name of Woodard, and the purchase price remaining unpaid was eleven thousand dollars. Woodard, on said date, made and delivered to defendant a bond for a deed or agreement to convey the said section to defendant on or before June 1, 1894, provided defendant should have paid the said sum of eleven thousand dollars with interest from June 1, 1889, at the rate of eight per cent per annum. This agreement recited that the eleven thousand dollars was the purchase price agreed to be paid for said land by defendant. Defendant being in possession of the said land at the time of the making of the bond for a deed, remained in possession and used the said land, although the bond or agreement said nothing about possession. After the bond was made, defendant paid Woodard, during his lifetime, interest on the eleven thousand dollars as he agreed in the bond, but never paid any taxes on the land. Woodard paid all the taxes, the property standing in his name, and being assessed to him. On December 21, 1894, the said Woodard died, and the plaintiff was afterward appointed executrix and letters testamentary issued to her. In February, 1895, the defendant paid the interest on the eleven thousand dollars to

plaintiff.   Defendant's own language is: "I paid interest on
that money since Woodard's death.  I had a settlement with
Albert Bemmerly, and paid interest on eleven thousand dol-
lars in February, two years ago."   The defendant was testify-
ing in July, 1897.   In another portion of defendant's evidence
he said: "I paid interest on eleven thousand dollars for six
years, commencing June 1, 1889, at eight per cent."   Since
February, 1895, the defendant has refused to pay interest and
does not claim to have paid any part of the interest or prin-
cipal since that date, and neither does he claim to have made
any tender of the money.

In view of the evidence and of the repudiation of the con-
tract to purchase by defendant, and his assertion and claim of
title, it is evident that the court below erred in finding in favor
of defendant on the issue of title and adverse possession.   The
purchase price for the property was paid by plaintiff's testate,
and the title conveyed to him.   The legal title never was in
defendant.   His possession was under the bond for a deed,
at least by implication, and while occupying under Woodard,
and paying interest on the purchase price, and without any
payment of taxes, defendant could not acquire title by adverse
possession.   Defendant, being in possession of the land under
a contract to purchase, is estopped from denying the title of
Woodard.   By the very fact of taking, under a contract for a
deed to be thereafter executed by Woodard, he recognized the
title of Woodard and acknowledged himself as holding in sub-
ordination and not in antagonism to it.   As defendant en-
tered into possession under the agreement with Woodard, and
held possession by paying as rent the interest on the purchase
money, the law will presume a continuance of the relation until
the contrary clearly appears.   (1 Warvelle on Vendors, 200,
201.)   There is not a word in the record to show that defend-
ant ever repudiated the contract or assumed an adverse position
until after February, 1895.   Therefore, it is apparent that the
finding of the court that defendant had been in the adverse
possession of the land for five years continuously immediately
preceding the commencement of the action, is not supported
by the evidence.

The contention of defendant in the court below, and the one

evidently adopted by the court, was that the deeds made to
Woodard were in fact made as security, and that the transac-
tions amounted to and were in effect a mortgage. The title
was held by · Woodard as security and in some features the
transactions partook of the nature of a mortgage, but we do
not think that the effect was simply a mortgage and nothing
more. If defendant had been the owner of the property and
had borrowed the fourteen thousand dollars from Woodard,
giving deeds to the property as security for the amount, the
transaction would in law have been a mortgage. But in this
case the legal title never was in defendant. He had no legal
title to convey, and did not attempt to convey, any title as
security. The legal title was transferred to Woodard and he
held it, not only as security, but in trust for defendant. It is
provided in the Civil Code, section 2920, that a "mortgage is
a contract by which specific property is hypothecated for the
performance of an act, without the necessity of change of pos-
session," and section 2924: "Every transfer of an interest in
property, other than in trust, made only as security for the
performance of another act, is to be deemed a mortgage."
The transfer in this case was not made solely as security
for the purchase money. It was made for the purpose of finally
having the title go to defendant, but in the meantime such
title was held in trust for defendant and for the security of
Woodard. The transactions did not simply constitute a mort-
gage and nothing more. (*Low v. Henry*, 9 Cal. 550; *Fowler v.
Rice*, 17 Pick. 100; *Hill v. Grant*, 46 N. Y. 496; *Stephenson v.
Thompson*, 13 Ill. 186; *Wilson v. McDowell*, 78 Ill. 517; Jones
on Mortgages, sec. 323; *Campbell v. Freeman*, 99 Cal. 547.) In
the latter it is said:

"The rule is familiar that when, upon a purchase of real prop-
erty, the purchase money is paid by one person and the convey-
ance is made to another, a resulting trust immediately arises
against the person to whom the land is conveyed, in favor of
the one by whom the purchase money is paid. The real pur-
chaser of the property is considered as the owner, with the right
to control the title in the hands of the grantee and to demand
a conveyance from him at any time. The same rule prevails
if the money paid by the party taking the title is advanced by

him as a loan to the other, and the conveyance is made to the lender for the purpose of securing the loan. But in the latter case the purchaser cannot demand the conveyance until he has paid the money advanced, and for which the land is held as security. In such case the grantee holds a double relation to the real purchaser—he is his trustee of the legal title to the land and his mortgagee for the money advanced for its purchase."

When defendant desired to purchase the land the owners, Lowe and Merkeley, might have given him a bond for a deed each for the amount of the purchase price. If this had been done it does not seem that it could be contended that Lowe and Merkeley would hold the title as mere security. Their position is well defined in Pomeroy's Equity Jurisprudence, volume 3, section 1260. The author says, in speaking of a bond or agreement to convey from vendor to vendee: "In the latter, although possession may have been delivered to the vendee, and although under the doctrine of conversion, the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title or do anything by which it shall be divested except by performing the very obligation on his part which the retention of such title was intended to secure—namely, by paying the price according to the terms of the contract. To call this complete legal title a lien is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title and has no need of any lien. His title is more efficient security, since the vendee cannot defeat it by any act or transfer even to or with a *bona fide* purchaser."

We think Woodard possessed the same rights as would have been possessed by Lowe and Merkeley if they had made the agreement to convey to defendant. To allow him all the rights that Lowe and Merkeley would have had cannot do defendant any injustice. After Woodard had, at defendant's request, furnished the money and given defendant every opportunity to repay him, to deprive him or his representative of the same protection that would have been given to Lowe and Merkeley would be a gross injustice. It would be to allow the defendant, like the viper

in the fable, to turn and sting the one who had been his friend. Therefore, it will be assumed that plaintiff, as the legal representative of Woodard, possesses the same rights as if Woodard had been the owner of the land at the time the contract of sale was made with defendant. The legal title remained in Woodard. The defendant, being in possession under the agreement, had a right, by complying with his contract, to procure the title. If he should come into court, setting up his rights under the contract, and offering to pay the balance due on the purchase price, and, while asking for equity, showing his willingness to do equity, the court would enforce the contract and compel a conveyance. But he will not be allowed to retain the possession of and title to the property without paying the balance due on the purchase price. He cannot take the land which was paid for by Woodard and claim all the benefits of the contract without assuming the burdens. A court of equity will not allow him to affirm the contract, so far as he deems it beneficial to himself, and to repudiate it when it imposes a burden.

The defendant having by his answer repudiated the contract, and having refused to pay the balance due, the plaintiff can maintain the present action to recover possession. (2 Warvelle on Vendors, 892; 1 Sugden on Vendors, 312; *Love v. Watkins*, 40 Cal. 567; 6 Am. Rep. 624; *Thorne v. Hammond*, 46 Cal. 531; *Whittier v. Stege*, 61 Cal. 241.) In the latter case it is said: "When, therefore, the defendants, after they had obtained possession lawfully, substituted repudiation of the contract and refusal to comply with its terms, for performance or willingness to perform, they divested themselves by their wrongful act of the equitable estate which they acquired under the contract, and became trespassers or tenants at will, against whom their repudiated vendors could maintain ejectment. The vendors were remitted to their legal title, and in an action upon it the defendants could not invoke as a defense to it a contract of sale which they repudiated and refused to perform."

The defendant could have set up in his answer the agreement to convey, his willingness to perform and offer to perform on his part by paying the balance found to be due, and the court, by its decree, could have, while giving the plaintiff the

amount due, also fully protected the rights and equities of defendant. In view of the importance of this case and the hardships that it might impose upon defendant if he should be compelled to again try the case on his present answer, we will direct that he be permitted, within a reasonable time, to file an amended answer and cross-complaint if he be so advised.

The judgment and order are reversed, and the court below directed to allow defendant to file an amended answer and cross-complaint within a reasonable time in accordance with the views herein expressed.

Hearing in Bank denied.