[Civ. No. 580. First Appellate District.—May 15, 1909.]

C. A. HOOPER, AUGUSTA C. OSMONT, ADELLA O. SPERRY, and VANCE C. OSMONT, Appellants, v. A. YOUNG and AMELIA G. WEBBER et al., Respondents.

EJECTMENT—PLAINTIFFS CLAIMING AS VENDEES OF MORTGAGOR—OUTLAWED DEBT—TITLE HELD BY VENDOR AS SECURITY.—Where plaintiffs in ejectment claim to be the successors in interest of a mortgagor whose debt is outlawed, and which they repudiate, claiming to be holders of the legal title, but it appears in fact that the vendor retained the legal title as security for the debt, and that one of the defendants is the successor in interest of such title and the codefendant is a tenant of such defendant, the plaintiffs are not entitled to recover the possession of the property.

ID.—PAYMENT OF DEBT ESSENTIAL TO OBTAIN DEED OF VENDOR'S TITLE. In such case the payment of the debt by the purchaser or his grantees was essential to obtain a conveyance of the title from the vendor or his grantee.

ID.—EFFECT OF OUTLAWED DEBT—VENDOR'S TITLE UNAFFECTED.—The outlawing of the debt for which the purchaser was responsible cannot affect the legal title remaining in the vendor, nor operate to transfer the same to the purchaser.

ID.—EFFECT OF REPUDIATION OF DEBT—LOSS OF EQUITIES.—When ·the purchaser and his grantees have refused to pay the debt and have repudiated the same, they are neither entitled to recover the posses-

sion from the vendor or his grantee, nor to enforce any equities against such grantee, their equitable estate having been divested by such repudiation, and they have no equities that ought to prevail against the legal title.

ID.—IMPROPER JUDGMENT FOR PLAINTIFFS—NEW TRIAL PROPERLY GRANTED.—When the court had improperly rendered judgment for plaintiff on the theory that the transaction was a mere mortgage, it properly granted a new trial to the defendants.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Titus & Creed, and A. M. Kidd, for C. A. Hooper, Appellant.

Drown, Leicester & Drown, for Remaining Appellants.

Wm. B. Haskell, for Respondents.

HALL, J.—This is an appeal from an order granting defendants a new trial.

The action is in ejectment for the recovery of a tract of land containing about forty acres, situated in the city and county of San Francisco. The original plaintiffs were C. A. Hooper and T. M. Osmont, but Osmont having died since the trial the other plaintiffs were substituted. Defendant Young is simply a tenant of defendant Webber.

This is the second appeal in this case. Upon the first appeal plaintiffs claimed title under a patent to one Wagner, which was held void, while defendants claimed title under a patent to one Weaver. (*Hooper* v. *Young,* 140 Cal. 274, [98 Am. St. Rep. 56, 74 Pac. 140].)

The Weaver title on the fourteenth day of January, 1873, was vested in one J. W. Shanklin, who on that day conveyed, for the named consideration of $1,500, to Wm. B. Swain. This deed was duly recorded on the same day. Swain conveyed to Webber by gift deed dated and duly recorded December 22, 1892.

On the first trial plaintiffs also claimed that the deed from Shanklin to Swain was a mortgage to secure $700, loaned by

Swain to Meeks, with which to in part purchase the property, and that as the debt had long since outlawed, defendants could claim nothing under such deed. The court did not pass upon this claim that the deed to Swain was a mortgage, but held "That as the admissions and presumptions in the case, even on plaintiff's theory that the deed to Swain was a mortgage, show that the defendant Webber, as successor to all the rights of Swain, is in possession of the premises as mortgagee, the finding of the court that the plaintiffs were entitled to the possession of said premises is not sustained, but is contrary to the evidence."

The controlling facts in the case are as follows:

On January 14, 1873, J. W. Shanklin was seised in fee of the premises in suit, and one Meeks desired to purchase the same. Swain paid $700 to Shanklin, and took a deed for the premises. Whether the other $800 was paid by Meeks does not clearly appear. Swain took a promissory note from Meeks for the $700, and interest at two per cent per month, and executed to Meeks an instrument whereby he agreed to convey the land to Meeks on the payment of the $700 and interest, in accordance with said note. The note by its terms was due July 14, 1873.

July 7, 1877, Meeks gave to Swain a new note for the principal and interest then due, amounting to $1,075.50, payable January 7, 1878. This note bore interest at one and one-quarter per cent per month, compounded monthly. At the same time Swain executed to Meeks a new agreement to convey upon payment of $1,075.50 and interest, according to the terms of said note, and any outlay that Swain might make for the protection of the property. Nothing has ever been paid on either of said notes save interest on the first note to August, 1874. Meeks has received no deed from Swain or Webber. Plaintiffs deraign title from Meeks.

The second note is long since outlawed; and appellant's contention seems to be that the deed from Shanklin to Swain was a mortgage given to secure the payment of the $700, and as this debt is long since outlawed neither Swain nor his grantee is entitled to hold the land. We think the case of *Woodard* v. *Hennegan,* 128 Cal. 293, [60 Pac. 769], effectually answers the claim of plaintiffs.

In *Woodard* v. *Hennegan,* Woodard advanced the purchase price of two parcels of land for Hennegan, and took convey-

ances from the vendors, and gave a bond to Hennegan for a deed. Hennegan repaid Woodard $3,000 of the purchase price, and at the time of the purchase took possession, and so continued in possession till suit was brought by Woodard's executrix to recover possession and to quiet title. Defendant set up title by adverse possession.

It was held that such a transaction was more than a mortgage, that in such a case the grantee holds a double relation to the actual purchaser, both as his trustee of the legal title, and as mortgagee for the money advanced for its purchase; that the rights of the grantee in such a case will be regarded the same as if the grantee of the legal title in trust as security had been the original owner of the legal title, and had made an executory contract of sale to the intending purchaser, retaining the title as security for the purchase money. Upon this point the court said: "We think Woodard possessed the same rights as would have been possessed by Lowe and Merkeley [the original owners] if they had made the agreement to convey to defendant. To allow him all the right that Lowe and Merkeley would have had cannot do defendant any injustice. After Woodard had, at defendant's request, furnished the money, and given defendant every opportunity to repay him, to deprive him or his representative of the same protection that would have been given to Lowe and Merkeley would be a gross injustice. It would be to allow the defendant, like the viper in the fable, to turn and sting the one who had been his friend. Therefore, it will be assumed that plaintiff, as the legal representative of Woodard, possesses the same rights as if Woodard had been the owner of the land at the time the contract of sale was made with defendant. The legal title remained in Woodard. . . . The defendant having by his answer repudiated the contract, and having refused to pay the balance due, the plaintiff can maintain the present action to recover possession."

Under the doctrine of the case just cited the rights of Swain and his grantee Webber are the same as if Swain had owned the land, and had agreed to sell to Meeks, giving a bond to convey upon payment of the balance of the agreed price. It is difficult to see any plausible reason why Swain should not be entitled to the same protection he would receive if he had been the owner, and had made a contract to convey upon pay-

10 Cal. App.—38

ment of the balance of the purchase price. The deed from Shanklin to Swain conveyed to Swain the entire legal title held by Shanklin.

Of this title Swain and his grantee Webber have never been divested. The outlawing of the Meek note did not divest Swain of his title or transfer such title to Meeks. Only on payment of the debt would Meeks or his grantees be entitled to a conveyance of such title.

Under the rule laid down in *Woodard* v. *Hennegan,* 128 Cal. 293, [60 Pac. 769], Swain, as a grantee, who had advanced the money for the purchase price, and given a bond to Meeks for a deed to be executed on repayment of such money, stood in the position of a vendor under a contract to convey upon payment of the purchase price. A vendee under a contract to sell does not obtain title by the outlawing of his contract to purchase, or of his promise to pay the purchase price.

We do not understand appellants to contend that plaintiffs have obtained any title by adverse possession. At any rate there is nothing in the record to support any such theory.

There was nothing in the contract between Swain and Meeks about possession. Whatever possession Meeks took, if any, it is certain that he was not holding adversely to Swain up to the execution of the second agreement and note in 1877; and there is no pretense in the evidence that plaintiffs or Meeks ever paid any taxes on the premises save for two years. The evidence upon the question of possession by the various lessees of the parties is only important upon the theory that Swain's rights are to be measured by those of a mortgagee only. They are not to be so measured, however. He had the rights of a vendor who had retained the legal title till payment of the purchase price.

Plaintiffs, as the successors in interest of Meeks, have clearly repudiated the only contract under which Meeks might have any equities. This they did by bringing this action in eject-. ment, without offering to perform the conditions under which Meeks might originally have been entitled to a deed and the title, but setting up an adverse title under the Wagner patent. What was said upon this subject in *Woodard* v. *Hennegan,* 128 Cal. 293, [60 Pac. 769], exactly covers this phase of this case: "The defendant having by his answer repudiated the contract, and having refused to pay the balance due, the plaintiff can maintain the present action to recover possession. (2

Warvelle on Vendors, 892; 1 Sugden on Vendors, 312; *Love*
**v.** *Watkins,* 40 Cal. 567, [6 Am. Rep. 624]; *Thorne* v. *Ham-
mond,* 46 Cal. 531; *Whittier* v. *Stege,* 61 Cal. 241.)    In the
latter case it is said: 'When, therefore, the defendants, after
they had obtained possession lawfully, substituted repudiation
of the contract and refusal to comply with its terms, for per-
formance or willingness to perform, they divested themselves
by their wrongful act of the equitable estate which they ac-
quired under the contract, and became trespassers or tenants
at will, against whom their repudiated vendors could maintain
ejectment.    The vendors were remitted to their legal title,
and in an action upon it the defendants could not invoke as
a defense to it a contract of sale which they repudiated and
refused to perform.' "    (*Woodard* v. *Hennegan,* 128 Cal. 293,
[60 Pac. 769].)

As the rights of Swain (Webber's grantor) were those of
a vendor, holding the legal title, the rights of Meeks were those
of a vendee, entitled to a conveyance of the title on payment
of the balance of the purchase price.

The only title or equity that plaintiffs have or now claim
is as grantees of Meeks under his contract with Swain.    This
contract has not been performed on the part of Meeks or plain-
tiffs, but plaintiffs have repudiated its obligations.    They
have no equities that ought to prevail against the legal title.

The order is affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on July 14, 1909.