*1828.*

*Whittick*
*v.*
*Kane.*

---

### WHITTICK *v.* KANE AND OTHERS.

Parol evidence is admissible to show that a deed, absolute in its terms, was intended by the parties as a mortgage.[1]

*Bona fide* purchasers without notice, who have actually paid the purchase-money, cannot be disturbed in their title to the premises purchased, where the deed intended as a mortgage is absolute on its face.

In such cases, the remedy of the mortgagor is personal against the mortgagee and his legal representatives for the moneys received on the sale of the mortgaged premises.

In taking and stating an account of the amount due on such mortgage, the mortgagee will be charged with the rents and profits of the mortgaged

---

[1] See *Ante,* 77.

premises from the time he took possession, and also with the amount of
the purchase-money received by him on the sale of the premises, together
with interest thereon to the time of stating the account.

THE complainant filed his bill in this cause in October,
1821, setting forth that, in January, 1772, his paternal grand-
father owned lot No. 19, in Snyder's patent, in the town of
Hoosick ; that he was about 60 years old, ignorant and in-
capable of reading or writing, or of understanding the con-
tents or import of legal conveyances.  That on the 11th of
November, 1763, he borrowed of Cornelius Van Schelluyne,
father of Dirck Van Schelluyne one of the original defend-
ants in this cause and of Deborah the wife of Elias Kane,
£50, for which he gave his bond payable with interest, to-
gether with a warrant of attorney to confess judgment there-
on, but no. judgment was entered.  That on the 18th of
*January, 1772, Whittick executed to Schelluyne an absolute
deed of lot No. 19, and of two other lots which afterwards
fell within the Vermont line ; which deed was only intended
as a security, by way of mortgage, to secure the money
loaned, with interest thereon, but no written defeasance was
ever executed.  That Whittick continued in possession of
the whole premises until two lots were taken by the state
of Vermont, and then continued in the actual uninterrupted
possession of lot No. 19 until his death, in 1791, and always
considered and spoke of the conveyance to Schelluyne as a
mortgage ; and the latter never claimed the possession or
fee of the premises, or exercised any acts of ownership over
the same by leasing, or otherwise, but always treated the
premises as the property of Whittick, subject however to
the payment of his debt.  That at the death of John Whit-
tick, he left two children ; Abraham, the father of the com-
plainant, and Henry, an idiot.  That Abraham Whittick
continued in possession of No. 19 until July, 1792, when
he died in possession, leaving his wife and the complainant,
and his sister, then infants under the age of three years,
him surviving, who together with the idiot continued in
possession of the premises.  That in 1796, the complain-

[*203]

ant's mother married Henry Lampman, who came on to the lot and continued in possession thereof, by virtue of the estate of his wife, and continued to reside on the premises until the death of the complainant's mother in 1798; when he left the premises, and Peter I. Lampman entered into possession thereof. That Peter I. Lampman attorned to Schelluyne and continued to reside on the premises with Henry Whittick the idiot, until April, 1816, and during that time made large payments to Schelluyne out of the produce of the lot towards the debt for which it was mortgaged. That Cornelius Schelluyne, down to the time of his death, in 1813, never pretended to have any thing more than a mortgage interest in the premises; and frequently admitted the right of the complainant and his sister to redeem the same when they were of age, and promised to convey to them on the complainant's giving security to support his uncle, the idiot. That in 1809, the complainant's sister married Solomon Foster, *and moved to some part of the state of Ohio; and Henry Whittick, the idiot, died in 1820, leaving the complainant and his sister his heirs at law. That Cornelius Van Schelluyne devised and bequeathed all his estate to his son Dirck and to his daughter Deborah, wife of Elias Kane, and made his son and Kane executors. That in 1816, the defendant Kane went on to the premises, claiming the same in behalf of his wife and Schelluyne, and directed Lampman to remove therefrom, together with Henry Whittick, the idiot; and that on the 22d of March, 1816, Dirck Schelluyne and wife, and Kane and wife, conveyed the premises in fee to the defendants Rogers and Sherwood, for $2,500.

The defendants Rogers and Sherwood, by their answer, admitted the purchase made by them, but insisted that they were *bona fide* purchasers without notice of the equitable right claimed by the complainant. Dirck Schelluyne and Kane and wife denied all knowledge that the conveyance of the premises to Cornelius Schelluyne, in 1772, was intended as a mortgage, and insisted upon it as an absolute

conveyance. They admitted the sale of the premises to Rogers and Sherwood, but denied all knowledge of the principal facts stated in the bill, and put the complainant to the proof thereof; and they also alleged that they had found among the papers of Cornelius Van Schelluyne a bond, purporting to be executed by John Whittick and Abraham Whittick, dated January 24th, 1787, conditioned to pay him £225 12s. on the 1st of February then next, with interest, and also a warrant of attorney to confess judgment thereon; that no judgment had been entered, and no payment was indorsed thereon; and they insisted upon the benefit of the statute of limitations, and the statute of frauds.

The defendant Dirck Van Schelluyne died after proofs had been taken in the cause, and the suit was revived against his heirs and legal representatives.

*C. V. Denniston*, for the complainant.

*C. V. S. Kane*, for the defendants.

*THE CHANCELLOR:—By the testimony in this cause, the complainant has established the principal allegations contained in his bill. It appears that Crean Brush, by lease and release bearing date on the 24th and 25th of September, 1762, for the consideration of 50l., conveyed lot No. 19 in Snyder's patent, in the town of Hoosick, to John Wittick or Whittick, the paternal grand-father of the complainant, together with two other lots which were then supposed to be within that patent, but which afterwards fell within the line of the state of Vermont. Whittick went into possession of the land, and continued to reside thereon till his death; and his sons Abraham Whittick, father of the complainant, and Henry Whittick, an idiot, resided with him on lot No. 19, which is the only subject of controversy in this cause. In 1791, John Whittick died intestate, and leaving his two sons his only heirs at law. In the succeed-

[*205]

ing year, Abraham was killed by being thrown from a horse, and left the complainant and his sister Caty, both at that time very young, his only children and heirs. The widow of Abraham continued on the farm with her infant children, and their uncle the idiot, and a few years afterwards married Henry Lampman, who moved on to the farm with her. She died shortly after, and the complainant was then put out to learn a trade, and his sister went to live with one of her maternal relatives. Henry Lampman soon after left the farm, and Peter I. Lampman succeeded him; but in what manner he went into possession does not distinctly appear. Henry Whittick, the idiot, continued to reside with him on the farm, and was supported by him until he left the place in 1816. Peter I. Lampman either went into possession under Schelluyne, or attorned to him afterwards; as he recognized him as his landlord, and paid him rent for the use of the farm over and above the expense of supporting the idiot, who was wholly incapable of doing any thing for himself. In 1809, Caty, the sister of the complainant, then under age, married Solomon Foster, and a few years afterwards moved to the state of Ohio, where she and her husband and one of her children have since died, but *leaving one child who is supposed to be still living. When Lampman was turned out of possession of the farm, by the defendants, in 1816, Henry Whittick, the idiot, was also removed therefrom, and died in the poorhouse in 1820, without issue.

[*206]

John Whittick, the grand-father of the complainant, executed a conveyance of lot No. 19, and the two other lots, to Cornelius Van Schelluyne, by lease and release, bearing date the 17th and 18th of January, 1772, which the complainant insists was only intended as a mortgage or security for the repayment of the 50l. loaned to the grand-father by Schelluyne in November, 1763, and that both parties always considered and treated it as a mortgage only.

The conveyance is absolute in its terms, and was not accompanied by any written defeasance; and the defendant's

counsel contended that parol evidence cannot be received to establish the claim set up in the complainant's bill. Since the decision of the case of *Clark* v. *Henry* in the Court of Errors, (2 Cowen's Rep. 324,) I consider the law as settled in this state, that parol evidence is admissible to show that a deed, absolute in terms, was intended by the parties thereto only as a mortgage, or security for the payment of money. It will, therefore, be necessary to examine the evidence produced by the complainant in this case to support this allegation in his bill.

All the witnesses agree that Whittick was a very illiterate man, unable to read or write; and the deeds produced appear to have been executed, both by himself and wife, by affixing their marks.

Nathaniel Barnet testifies that in 1781, Schelluyne told him he had an absolute deed of the farm from John Whittick, which he had taken as security for money he had let Whittick have to enable him to improve the land; the witness thinks the amount stated to have been lent was 100*l.* The witness observed to Schelluyne, " we Yankees do business in a different way;" to which he replied, it was customary among the Dutch to deal in that way, as they had more confidence in each other than Yankees had. Schelluyne further *remarked that he did not consider himself to be the owner of the land, and considered the deed only as a security for the money lent. This evidence is strongly corroborated by the fact that John Whittick continued in the uninterrupted enjoyment of the farm claiming and improving it as his own until his death, nearly twenty years after the giving the deed; and that his heirs continued in the undisturbed possession for six or seven years afterwards, and until all who were in a situation to cultivate or carry on the farm were dead. Schelluyne then put a tenant in possession of the land; but the idiot son of John Whittick still continued to live there, and was supported out of the rents and profits of the farm during the life of Schelluyne.

[*207]

William Lake also testifies that in 1810 or 1811, he had a conversation with Schelluyne in which he acknowledged the right of the heirs of Whittick to redeem the farm, and admitted that he did not purchase the same, but only took the deed as security for the repayment of money loaned, which the witness thinks was said to be £60.

Henry A. Lake, also testifies to the same conversation, substantially, in 1811; and to similar conversations with Schelluyne, in 1809 and 1812, when he called upon him in relation to this business on behalf of the complainant and his sister.

Among the exhibits produced by the complainant is a cancelled bond and warrant of attorney, given by Whittick to Schelluyne, dated the 11th of November, 1763, conditioned for the payment of £50 and interest. And the defendants also produce a bond dated the 24th of January, 1787, given by John Whittick and his son Abraham, to Schelluyne, conditioned for the payment of £225 12s. with interest, witnessed by Henry Truax, and the body of which is apparently in the same handwriting. Truax, who was examined as a witness, does not appear to have been shown this bond, or interrogated respecting the same. But he does testify that he was once at the house of Whittick, in Hoosick, with Schelluyne, between 30 and 40 years previous to his examination, (probably at the time that bond was given;) that Schelluyne went to see about money owing to him by Whittick; and the witness was never there before or since.

[*208] *From the testimony which I have mentioned, independent of any other which was given in the case, I am satisfied the deed from Whittick was only intended by the parties as a security for the payment of money. The precise sum which was due does not distinctly appear; but it is probable the bond dated in 1787, and found among the papers of Schelluyne, was the sum actually due at that time.

This bond cannot, as is supposed by the defendants, have

been given for the loss of the two lots of land, embraced in
the deed, which afterwards fell into the state of Vermont.
The act authorizing the cession of the state of Vermont was
passed three years after the date of that bond; and the
cession was not made by the commissioners till the 7th of
October, 1790.   By the agreement of the commissioners,
the state of Vermont paid $30,000, for the purpose of in-
demnifying the owners of lands deriving titles from this
state which fell within the bounds of Vermont, as settled
by the commissioners.   If Schelluyne received any of those
moneys, under the act of the 6th of April, 1795, for the
two lots included in the deed from Whittick, the same
must be deducted from the amount due on account of the
loan.

The acknowledgment of Schelluyne, within ten years
previous to the commencement of this suit, is a sufficient
answer to the objection arising from the lapse of time, in-
dependent of the fact of the infancy of the complainant and
his sister, and the idiocy of their uncle, who owned one-
half of the premises.

The conveyance to Schelluyne being absolute on its face,
and the defendants Rogers and Sherwood having purchased
the premises and actually paid the purchase-money, with-
out notice of the equitable rights of the complainant, their
title to the premises cannot be disturbed.   The remedy of
the complainant is against the defendants Kane and wife and
the legal representatives of Dirck Van Schelluyne, for the
moneys received on the sale to Rogers and Sherwood.
There must be a reference to a master to take and state an
account of the amount due on the mortgage for principal
and interest, taking the sum mentioned in the condition of
the bond of the *24th of January, 1787, as the amount due
at that time, and charging the defendants for all sums re-
ceived by Schelluyne afterwards; and also charging them
for any sums received by Schelluyne from this state, or
otherwise, on account of the two lots which fell into the
state of Vermont; also charging them with the rents and

[*209]

profits of lot number nineteen, from the time that Schelluyne took possession thereof by his tenant, until the sale to Rogers and Sherwood, excepting so much thereof as was applied to the support of Henry Whittick the idiot. The defendants must also be charged with the amount of the purchase-money received from Rogers and Sherwood, and interest thereon from the time of the sale to them. And the usual authority must be given to the master to examine the parties on oath, and to compel the production of books and papers; and all other questions and directions must be reserved.