ROME. W. & O. R. CO. (WILLIAMS v.). See Case No. 17,735.

ROMEYN (WESTBROOKE v.). See Case No. 17,428.

ROMEYNE (COPE v.). See Case No. 3,207.

# Case No. 12,030.

## The ROMP.

[Olc. 196.] [1]

District Court, S. D. New York. Oct. Term, 1845.

FRAUDULENT CONVEYANCES — POSSESSION — BONA FIDES—CONDITIONAL SALES— LACHES— ENFORCEMENT OF MORTGAGE.

1. By the common law, an absolute bill of sale of chattels, unless accompanied by possession, is void as to creditors and bona fide purchasers. The bona fides of the transaction, as between the parties, and the fact that the possession remained with the seller for justifiable purposes, would not vary the rule.

· [Cited in brief in McKibbin v. Martin, 64 Pa. St. 355.]

2. Even if the arrangement between the mortgagee and mortgagor was that the latter was to remain in possession of the vessel until the mortgagee had a reasonable opportunity to enforce his mortgage, still this would not affect the rights of bona fide purchasers for a valuable consideration.

3. Upon the question of the bona fides of a purchase of a chattel, this court will determine the facts upon the principles which govern trials by jury.

4. Conditional sales, which may be regarded valid without a change of possession, have reference to a conveyance upon a condition other than the repayment of money loaned.

5. The sale of a vessel at public auction for a valuable consideration to a purchaser ignorant of any mortgage, and who had bought after seeing her papers, if it would not give an absolute title of itself, would show such laches on the part of the mortgagee, that he would not be permitted to set up any priority.

[Cited in The D. M. French, Case No. 3,938.]

6. The mortgage lien will not be sustained, although put in suit the first opportunity by the mortgagee, against subsequent purchasers without notice.

7. It is a principle of equity that an encumbrancer upon various parcels of property must exhaust his remedy against that remaining with his debtor, before he resorts to that portion held by bona fide purchasers, or under junior encumbrance.

In admiralty.

Mr. Benedict, for libellant.

Mr. Bradford, for claimant.

BETTS, District Judge. This was a suit in rem. The libel, filed July 20, 1841, alleges that Ezra Brown, about the first of December, 1838, being indebted to the libellant in the sum of $8,746.20 for a cargo of rice furnished the schooner Romp, at Georgetown, in the state of Georgia, gave him a promissory note for that amount, bearing date December 3, 1838, payable one day thereafter; and in order to secure the payment of the note on the same day, executed in his favor a mortgage on the schooner, then in the port of Georgetown, owned by Brown, belonging to the port of Baltimore. The libel sets forth the mortgage by which the vessel was hypothecated. A copy of the instrument is in evidence, and recites the indebtedness of Brown to the libellant, and the giving of the said promissory note, and adds, that "for the better securing the payment of said note, and holding the said Waterman harmless in his endorsements on my drafts for the said sum in the aggregate, do hereby sell, set over and deliver to the said Waterman my two vessels, called the Romp and the Morning Star, and also a lot of land (particularly described;) to have and to hold the said vessels, their freights, charters and emoluments, and the said land and its improvements, as they are each set forth in the bills of sale, policies of insurance and a deed of conveyance, and as they are each set forth in the papers appertaining thereto, which I have this day left in the possession of the said E. Waterman, which are all complete, with the exception of the schooner Morning Star,

---

1 [Reported by Edward R. Olcott, Esq.]

which vessel being solely my own, and paid for by me, this may be regarded as my full bill of sale and legal transfer for her, with the tackle and apparel; as also for the land and the improvements." It then proceeds to state "that the condition of the above obligation is such, that if the said E. Brown, or his drawee, Willard Rhodes, of Baltimore, shall well and truly, and without fraud and delay, meet and pay the drafts of the said E. Brown, within seventy days from the date of these presents, then this obligation to be void, otherwise to be in full force and effect; and the said E. Waterman to have, in addition to the property hereinbefore conveyed and set over to his exclusive use, the usual damages of ten per cent., and the charges of collecting the debt aforesaid, without litigation, in any state in the United States, and to claim the said vessels in any part of the world." The libel also charges, that the bills of sale, policies, &c., on said vessels were delivered over to the libellant, at the same time, to be held, with vessels, as security. That Brown failed to perform his covenants, and that the whole of said debt remains due and unpaid, with interest and damages, "which the whole of said securities is insufficient to pay." That before the mortgage was to become due, the schooner left the port of Georgetown, and from that time hitherto the libellant has been unable to reach her for the purpose of pursuing his lawful remedy, until informed that she was in the port of New-York, and that "he has been unable to find the schooner Morning Star." The libellant prays the attachment of the vessel, a decree in his favor for the debt and sale of the schooner, and that the proceeds be applied to the payment of his demand.

The answer avers that the claimant is the true and lawful owner of the schooner Romp, her apparel, &c., by bona fide purchase, and denies all knowledge of the mortgage set up by libellant, and of the authority of the mortgagor to give it, or of any consideration for it. The answer further alleges, that no change of possession of the schooner accompanied the execution of the mortgage; that it was fraudulent against the claimant, and subsequent bona fide purchasers who bought her, for a valuable consideration.

On the hearing, the libellant produced and offered in evidence the mortgage deed, and the debt for which it was executed, as also the protest of the drafts in Baltimore, and his payment of them to the holder. On the part of the claimant, it was proved that he purchased the schooner at public auction, in the city of New-York, on the 29th June, 1841, for $1,000, took possession of her, and fitted her for sea, and that she was arrested in this action two or three days before her day of sailing. She was owned, when so sold, by F. Belden. It was further shown that the vessel had been previously sold at public auction, at Havana, in the island of Cuba, in behalf of Ezra Brown, the mortgagor, to George

Knight & Co., of that place, on the first day of January, 1839, and was purchased by Richard S. Hubbard, for $3,800, and that the purchaser had no notice at the time of the existence of the mortgage or other lien upon the vessel; and that the original bill of sale of the schooner to Brown was left in the hands of the said George Knight & Co., who were agents of the schooner, and also of the witness, (R. S. Hubbard,) before and after the sale to him. There was no note or memorandum endorsed on the papers of the schooner, of any mortgage incumbrance. Brown was named as sole owner on the register. On the 31st March, 1840, Hubbard sold two-thirds of the vessel to Jonathan H. Hudson and Thomas H. Stevenson, for $2,665.66. These purchasers had no notice of any mortgage or other lien held by the libellant on her.

In 1841, Frederick Belden bought the schooner in Appalachicola, Florida, from the agents of Hudson & Stevenson, for $1,200. Hubbard had previously conveyed his one-third to Stevenson, and the purchaser had no notice of the mortgage. The libellant produced a bill of sale of the vessel to E. Brown, which he alleges was left in his hands at the time the mortgage was executed, but offered no proof of that fact, or of the genuineness of the bill of sale. The claimant contended that under the facts in proof, the mortgage was inoperative and void as against subsequent bona fide purchasers, without notice, and that if it should be deemed valid, the libellant, before he can enforce it against the vessel to the prejudice of such purchasers, must show that he has exhausted his remedy against the other property included in the mortgage, and owned by the mortgagor.

My opinion is, that the first point is well taken, and being decisive of the case, it will be unnecessary to determine the other, although that also might be conclusive in equity against the action. The mortgage, upon its face, is an absolute transfer of the schooner, without any provision qualifying the possession. It is asserted, argumentatively, that it was manifestly the intent of the transaction that possession should remain with the mortgagor, because seventy days were allowed him to redeem the incumbrance, and also because it was stipulated therein that the mortgagee might claim the two vessels in any port of the world, in case the condition of the conveyance was not fulfilled. I do not deem it material to determine the signification of those provisions in the mortgage conveyance, because, being stipulations between the mortgagor and mortgagee solely, and never made known to the claimant, directly or by implication, they could not, upon the authority of any case referred to, uphold the incumbrance indefinitely, or to the prejudice of after purchasers. The mortgage was executed December 3d, 1838, and the claimant became the bona fide purchaser of

the schooner for a valuable consideration at public auction, on the 29th of June, 1841. This, in law, bars the assertion of a mortgage lien against him, even if the arrangement be understood as continuing the possession of the vessel with the mortgagor until the mortgagee had a reasonable opportunity to enforce the mortgage by legal process.

The libellant insists that the case of D'Wolf v. Harris [Case No. 4,221] settles the rule that such continuing possession does not affect the priority of his incumbrance on the vessel. The ship Ontario, ready for sea on a voyage to Canton, was conveyed with her cargo and its after proceeds, by absolute assignment, from her owner to the plaintiff. The conveyance, however, was intended as a security to cover debts then owing the assignee by her owner, and thus operated equitably and at law as a mortgage only. The ship lay at this port thirty days after the execution of the assignment. The assignee did not take possession of her, but permitted her to make the voyage in possession of the mortgagor; no notice of the assignment was given on the ship's papers. In a controversy between the assignee and the creditors of the mortgagor, Judge Story held, that this being a New-York transaction, was to be determined conformably with the New-York law, and that Bissell v. Hopkins, 3 Cow. 166, was a case directly in point, establishing the right of a mortgagee of chattels, to enforce his security in preference to other creditors, although possession of the property was left with the mortgagor. He also regarded the title of the mortgagee protected by the general law. The correctness of this decision, in so far as it rested upon the case of Bissell v. Hopkins, must be considered questioned, if not overthrown, by the subsequent cases in the state of New-York of Divver v. McLaughlin, 2 Wend. 596, and Gardner v. Adams, 12 Wend. 297; 2 Kent, Comm. 515–532. The Revised Statutes have since declared that such conveyances are absolutely void against the creditors of the vendor, or a subsequent bona fide purchaser, unless those claiming under the assignment prove it was made in good faith and without intent to defraud. 2 Rev. St. (2d Ed.) p. 70, § 5; Revisor's Notes, 3 Rev. St. p. 657, ad idem; 2 Kent, Comm. (5th Ed.) 529, note. No direct evidence of such bona fides has been offered by the libellant in this case; but it is fairly to be implied, from all the proofs, that the security was given and taken without intention to defraud, and that the owner was allowed, in good faith, to retain possession of the vessel to enable him to fulfil and carry out the condition upon which the assignment was made. The court, in this class of cases, determine the facts upon the principles which govern trials by jury, and a jury would be well warranted in law in declaring this conveyance valid. 24 Wend. 186; 26 Wend. 511; 1 Hill, 421; Id. 428; 4 Hill, 271.

But if at this time the right of the libellant under the mortgage would be preferred in the courts of this state to that of the subsequent purchaser, this action cannot be governed in the national courts by rules of law peculiar to the state of New-York. It has not been shown that the law of South Carolina, where the conveyance was executed, varies from the general law, if that fact would uphold the conveyance here; and accordingly the principles recognised by the federal courts, or the English tribunals, are those which must control the question on this hearing. If the conveyance in this instance was absolute, the case of Hamilton v. Russell, 1 Cranch [5 U. S.] 309, is in point, and destroys the title of the libellant. It settles the rule of decision for this court, and is moreover in conformity with the early English authorities (1 Burrows, 467; 2 Durn. & E. [2 Term R.] 587), that an absolute bill of sale of chattels is itself a fraud, unless possession accompanies and follows the deed.

This conclusion of law cannot be displaced by evidence proving the bona fides of the transaction, and that possession remains with the grantor for justifiable purposes. This is asserted to be the rule of the common law, independent of the statute of frauds (1 Cranch, [5 U. S.] 309), unless, perhaps, an exception may exist in case the property is so situated that possession could not be taken of it at the time of its assignment. [Case No. 13,-978.] The court recognised a distinction between the sale of a chattel to take effect immediately and one to take effect at some future time, and assented to the doctrine of Buller, J., on that point (2 Durn. & E. [2 Term R.] 587), that possession of the chattel continuing with the vendor until such future time, or until the condition be performed, is consistent with the assignment, and complies with the rule that possession must accompany and follow the conveyance. That distinction supplies no aid to the mortgagee in this case, because the assignment to him had immediate effect, and its operation was not to be deferred to a period in futuro. The conditional sales, which may be regarded valid without a change of possession, have reference to a conveyance upon a condition other than the repayment of money loaned. When it appears, either by express terms or plain implication, that the deed is intended only as a security for money, it cannot bar the rights of creditors or bona fide purchasers against the property. The doctrines applicable to conditional sales do not govern the case of a mortgage. Ryall v. Rolle, 1 Atk. 165, 170, before Lord Chief Justice and Justice Chief Baron, and Burnet, Justice of Common Pleas, and Chief Justice Hardwicke, 17 Ves. 196, note 1. Even if conditional sales can stand under the statute of frauds on a different footing from absolute ones, the operation of those authorities cannot be restrained by a different rule in the courts of this state, if the fluctuating decisions in the state courts amount to the declaration of any different

doctrine. Many of the cases in which the validity of a mortgagee's title to vessels was denied, when possession was left with the mortgagor, arose under the English bankrupt law (Holt, Shipp., p. 2, c. 1, §§ 2–4), but the decisions proceed on general principles, holding such possession to be fraudulent, and that the ownership of the vendor is not thereby divested (2 Kent, Comm. 517), and therefore apply with like force as if the question had been presented on the part of creditors at large, or purchasers.

Another feature in D'Wolf v. Harris [Case No. 4,221], which may have conduced to the conclusion adopted by the court, is, that the controversy was between creditors upon debts existing antecedent to the assignment. Harris arrested the vessel to recover duties due the United States prior to the execution of the mortgage, so that the possession of the vessel by the mortgagor had in no way induced a credit to the fraud or prejudice of the United States, and the plaintiff had secured the position of the most diligent creditor. Had the United States been bona fide purchasers of the ship for a full consideration actually advanced to the owner, who was in possession, the circumstances would not fail to have had an important influence, especially in respect to the relative equities of the litigating parties. The opinion delivered in the court of errors (26 Wend. 511) seems to rest the argument in favor of the paramount right of the mortgagee, without possession, on the ground that there was no reason to suppose the creditors opposing the mortgage had advanced their money on any credit given, because of the possession of the property by the mortgagor. The case of The Mary [Case No. 9,187], bears directly upon the point, and determines that such mortgage interest shall not be allowed to prevail against a subsequent bona fide purchaser or incumbrancer, without notice. The contest was between an after bottomry creditor and a mortgagee, out of possession at the time the bottomry was given, (by the owner himself,) but who had acquired possession of the vessel under the mortgage before suit brought on the bottomry. Judge Thompson decides to recognise such bottomry as superseding the antecedent incumbrance, and puts his decision "upon the principles of the common law, as well as of equity," that the first mortgage must be postponed to the second hypothecation, because the owner "was permitted to remain in possession, and to act as the absolute owner of the vessel; the register and all her papers standing in his name, and without any endorsement showing any incumbrance upon the vessel." That statement exactly describes the condition of this vessel, and the conclusion drawn from it by the judge appositely applies here also;—the mortgagee "is therefore chargeable with negligence in permitting the mortgagor to appear as absolute owner, and thereby putting it in his power to impose upon a foreign creditor, who should advance money upon the security of the vessel." The libellant must be presumed cognizant of the voyage contemplated by the schooner; and as she went to the charge of Knight & Co., at Havana, the previous and known agents of Brown, the owner, the presumption is conclusive that he was also apprised of that consignment. He allowed her to go on that destination in possession of her papers, showing Brown to be owner, and without notice or qualification to the contrary, attached to them. Brown's sale of the vessel at public auction for a valuable consideration, and to a purchaser ignorant of this circumstance, and who bought after seeing her papers, if not giving an absolute title of itself, must be regarded a laches on the part of the libellant, sufficient to prevent him setting up his mortgage priority as against such purchaser, or those bona fide deriving title through him.

Although these considerations must defeat the title now brought forward by the libellant, yet the court cannot overlook other features in the case operating against his action, the benefit of which the claimant may legally demand. The vessel was twice sold at public auction, and once at private sale; at each time, as it appeared on her papers, there was a full title vested in the vendor; and after a lapse of more than two years and a half, without questioning the validity of those sales, the libellant attempts to reclaim her under his secret incumbrance. Had he an express hypothecation, even by bottomry upon her, such laches, accompanied with changes of ownership, would bar the enforcement of it against the vessel in the hands of purchasers so acquiring her. Blair v. The Charles, 4 Cranch [8 U. S] 328. The right of material men to pursue their lien against a vessel having changed ownership under similar circumstances, was denied in this court several years since. The Utility [Case No. 16,806].

The excuse that the vessel had never before, within the knowledge of the libellant, been found where he could proceed against her, had it been proved, could not avail him, because, having entrusted the possession to her owner, without notice to others of his lien, he must, in the language of the courts in like cases, be regarded as confiding the integrity or solvency of the owner, and as having waived his incumbrance as against subsequent creditors or purchasers. Whittick v. Kane, 1 Paige, 202.

The case also calls upon the court to notice, that the mortgage deed conveyed another vessel, and also real estate to secure the same debt. It is a settled principle of equity that an incumbrancer upon various parcels of property must exhaust his remedy against that remaining with his debtor, before he resorts to those parts held by bona fide purchasers, or under junior incumbrances. New York & Jersey Steamboat Ferry Co. v. Jersey Co., Hopk. Ch. 460; Van

Rensselaer v. Stafford, Id. 569; **Gouverneur v. Lynch**, 2 Paige, 300.

The libel avers that the libellant has no resource for his debt other than to his security upon this vessel, yet he gives no proof that the other property embraced in the mortgage is not an adequate security, nor that it does not still remain in the ownership and possession of Brown. The libel must be dismissed, with costs to be taxed.