## PIERCE *v.* ROBINSON, Adm'r of the Estate of FRIERSON, Deceased.

A MORTGAGEE of land in possession must account for rents and profits; and after payment of the debt for which the mortgage was given, he becomes, by operation of law, Trustee of the surplus for the mortgagor.

Where it was agreed between the mortgagor and mortgagee that the land and its proceeds were to be held, not only as security for the debt due the latter, but for debts due third persons, laborers on the land for instance : *Held*, that such agreement was an appropriation of said surplus for the benefit of said third persons, not revocable when they have acted on the faith of it, and the mortgagee is a Trustee of the same for said third persons.

Such an agreement operates as an equitable assignment of the surplus so soon as any exists, which does not pass to the Administrator of the mortgagee as general assets for the benefit of creditors at large, but is subject, in his hands, to the same trust which attached to it before the decease of the intestate.

Equity upholds assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility, provided they are fairly made, and are not against public policy; and an agreement for such interests will take effect as such assignment when the subjects to which they refer have ceased to rest in possibility and have ripened into reality.

Parol evidence is admissible in equity to show that a deed, absolute on its face, was intended as a mortgage.

Such evidence is not restricted to cases of fraud, accident, or mistake, in the creation of the instrument.

Evidence of the circumstances under which the deed was made and of the relations existing between the parties is admitted, not to contradict or vary the deed, but to establish an equity superior to its terms.

The rule which refuses the admission of parol evidence to contradict or vary written instruments is directed to the language employed by the parties, and

Pierce *v.* Robinson.

does not exclude an inquiry into the objects and purposes of the parties in exe-
    cuting the instruments.
Fraud in the use of an instrument is as much a ground for the interposition of
    equity as fraud in its creation.
*Lee* v. *Evans*, (8 Cal. 424,) overruled, so far as it rejects parol evidence.

APPEAL from the Sixth District.

The case is stated in the opinion of the Court.    Defendant
had judgment.    Plaintiff appeals.

*Winans*, for Appellant.

I.    The evidence establishes the creation of an express trust
for the payment of plaintiff's debt out of a particular fund, re-
ceived and held by Frierson, as Trustee, for such purpose.    That
particular fund is shown to be now held by defendant, as Frier-
son's Administrator.    Plaintiff has a lien thereon for his debt.

II.    The facts found by the Court below are correct, so far as
they extend, but omit the material and controlling fact that the
property conveyed to Frierson was *per se* a trust fund for the
security and payment of the debt to plaintiff.

III.    Even if the property had been placed in Frierson's
hands merely as a security to him for assuming the payment of
plaintiff's debts, the doctrine is well settled that where a fund is
placed in the hands of a surety to indemnify him for assuming a
debt of his principal, the creditor, whose debt he undertakes to
pay, has a lien for his debt upon such fund.    (*Maure* v. *Harrison*,
1 Equity Cases Abr.; *Ex Parte Perfect*, Montague's Bankrupt
Reports, 25; *Ex Parte Waring*, 19 Vesey, 345; *Wright* v. *Mor-
ley*, 11 Id. 22; *Parsons* v. *Briddock*, 2 Vernon, 608; *Curtis* v.
*Tyler*, 9 Paige, 435; *Ohio Life Insurance Company* v. *Ledyard*, 8
Ala. 866; *United States* v. *Sturges*, 1 Paine, 525.)

IV.    Property held in trust does not pass to the representa-
tives of the Trustee; but as long as it can be traced and distin-
guished it inures to the benefit of *cestui que trust*.    And where
an assignment, though absolute upon its face, was intended by
the parties to be a security to a party who dies intestate for as-
suming another's debt, the creditor in an action against the Ad-
ministrator can enforce his lien against such security.    (*Moses*
v. *Murgatroyd*, 1 Johnson's Chancery Rep. 119—129.    See, also,

*Nelson* v. *Blight*, 1 Johnson's Cases, 205; *Clark* v. *Morgan*, 3 Paige, 373; *Malcolm* v. *Scott*, 3 Hare, 46; Eng. Ch. Rep. vol. 25, p. 45, and American cases there cited; *Kipp* v. *The Bank of New York*, 10 Johns. 62; *Hendricks* v. *Robinson*, 2 Johnson's Ch. 283, F. See, also, *Hoyt* v. *Story*, 3 Barbour, 262; *Ten Eyck* v. *Holmes*, 3 Sanford's Ch. 428; *Tannersley* v. *Anderson*, 4 Desau, 44; *Rogers* v. *Hossack's Executors*, 18 Wendell, 334; *Burn* v. *Carvalho*, 4 Mylne & Craig, 690; *Ten Eyck* v. *Holmes*, 3 Sanford's Ch. 429.)

V. The exception of defendant to the oral evidence of the witnesses on the ground that parol testimony was inadmissible to vary the written contract of the parties, was not well taken; and the evidence, that the deed and bill of sale, though absolute in terms, were given in trust or as a mortgage for the plaintiff's benefit, was properly admitted.

1. Parol evidence is admissible in equity to show that a deed or assignment, absolute upon its face, was intended as a mortgage or trust deed.

2. Even if such doctrine were not correct as a general proposition, yet still it is clearly so under the circumstances of this case. (*Moses* v. *Murgatroyd*, 1 Johnson's Ch. 228; *Slee* v. *Manhattan Co.* 1 Paige, 53; *Whiting* v. *Heslep*, 4 Cal. 327.)

*Clark & Gass*, for Respondent.

The first point presented by this record is, whether parol evidence was admissible to vary a written instrument, there being no allegation of fraud, accident, or mistake, in its execution, or in the use attempted to be made of it.

The Court held that parol evidence was not admissible without such allegation. But if parol evidence was admissible, still upon the case as made out, the judgment of the Court below was correct.

The Court finds that Frierson was not in any sense the surety of Hutchinson & Green. The draft accepted by him made the debt his own, and H. & G. were discharged from it. Plaintiff cannot, therefore, avail himself of the doctrine that the creditor is entitled to the benefit of the securities placed by the principal debtor in the hands of his surety. The relation of principal and surety does not exist in the case, and even if it did, the true

doctrine upon that subject, when applied to the facts of the case could not avail the plaintiffs.    The true doctrine is laid down in *Ex Parte Waring*, (19 Vesey Ch. Rep. 345.)

The case of *Moses* v. *Murgatroyd* differs materially from the case at bar, in this: that there, Ogden appeared and claimed that the coffee should be so applied, while here, Hutchinson & Green have settled with the Administrator, and received back into their possession the property against which the lien is attempted to be enforced.    Even if Frierson held this property in trust, he made the contract in his own name, and is individually liable.    See *Conner* v. *Clark*, (12 Cal. 168.)

To permit plaintiff to have a lien for the payment in full of his debt, would be a fraud upon the other creditors of the estate, and more particularly upon that portion of them, whose debts were contracted during the same period.

FIELD, J. delivered the opinion of the Court—BALDWIN, J. concurring.

In March, 1854, Hutchinson & Greene were the owners of a farm in Yolo County, and having become indebted in a large amount to Frierson, for advances of money to enable them to carry on their farming operations, executed to him a conveyance thereof, which, though absolute in form, was intended only as security for the payment of their indebtedness.    In September following, having become further indebted to Frierson, for advances, and being in debt to their laborers, they executed to him a conveyance of the personal property upon the farm, consisting principally of stock and farming utensils, and, at the same time, delivered possession of both farm and personal property.    The second conveyance was made, and the possession of the property under both conveyances delivered, upon the express agreement that such property, and the proceeds of the real property, were to be held, not only as additional security for the indebtedness of the grantors to Frierson, but for their indebtedness to the laborers who had been employed on the farm, and the future wages of laborers which the grantee might himself subsequently employ thereon; and that for the existing indebtedness of the laborers, the grantee would accept the drafts of the grantors. The plaintiff was one of the laborers, for the payment of whose

wages the agreement provided, and for the amount due to him a draft was drawn in his favor and accepted by Frierson. For the payment of the draft, and for his future labor, the plaintiff was unwilling to trust to the individual responsibility of Frierson, and thereupon Frierson, and the grantors, assured him that he was amply secured by the property; that it was held expressly for the security of the laborers, as well as for that of Frierson, Upon these assurances the plaintiff became satisfied, and subsequently acted upon their faith. Frierson died in February, 1855, and the defendant became the Administrator of his estate. The claim of the plaintiff was duly presented and allowed, and neither its amount or justice is questioned; but its payment out of the proceeds of the farm, in preference to the general creditors of the intestate, is contested. The proceeds arising from the sale of the crops of the farm are admitted to have been sufficient to satisfy the debt of Hutchinson & Greene to the intestate, and to cover the demand of the plaintiff. The former has been settled, and the property reconveyed to the grantors, under the sanction of the Probate Court; and the money for the latter remains in the hands of the defendant, to abide the determination of the present suit. The claims of the other laborers have been satisfied.

If the first conveyance is to be treated as a mortgage, then Frierson was liable after possession taken to account for the proceeds of the farm, and was chargeable for their net amount in the settlement of the debt for the security of which the conveyance was executed, and any surplus remaining was subject to the disposition of the mortgagors. (2 Story's Equity Juris. Sec. 1016.) For such surplus he was Trustee of the mortgagors, the trust arising from the very nature of the security by operation of law, and by the subsequent agreement of the parties the same became appropriated for the benefit of the laborers, including the plaintiff. Frierson thenceforth was Trustee of the surplus for them. It was not his property, to be disposed of as he might elect. Without the agreement, it would have been the property of the mortgagors, and held subject to their order; but, by the agreement, it became subject to the payment of the demands of the laborers, and, to that extent was theirs. The agreement was something more than a mere personal covenant of Hutchinson

& Greene, which they might at any time disregard, and make other disposition of the surplus. It was an actual appropriation, which they could not revoke, and which Frierson could not surrender, even upon the payment of his own debt, as upon his representations, as well as those of Hutchinson & Greene, that it was made and should be held for the benefit of the laborers, the plaintiff acted. In *Yates* v. *Groves*, (1 Vesey, Jr. 280,) Lord Thurlow held, that an order to pay a debt out of a particular fund belonging to the debtor, constituted an equitable assignment of the fund *pro tanto*, and gave a specific lien to the creditor; and in *Ex Parte South*, (3 Swans. 393,) Lord Eldon said: "It has been decided in bankruptcy, that if a creditor gives an order on his debtor to pay a sum in discharge of his debt, and that order is shown to the debtor, it binds him. On the other hand, this doctrine has been brought into doubt by some decisions in the Courts of Law, which require that the party receiving the order, should, in some way, enter into a contract. That has been the course of their decisions, but is certainly not the doctrine of this Court."

If the orders to which Thurlow and Eldon refer, would constitute an equitable assignment of the particular fund *pro tanto* against which they are drawn, equally so must the agreement in the present case—upon the faith of which, and the representations of the parties, the plaintiff relied—took the acceptance of one of them, and relinquished his claim upon the other. The agreement, under the circumstances of the case, must be deemed to have operated as an equitable assignment of the surplus, so soon as any existed, for the benefit of the laborers. Frierson, as Assignee, thereupon held the same as Trustee for their benefit. As trust property, the proceeds could not pass to the Administrator as general assets for the benefit of the creditors at large, but were subject in his hands to the same trust which attached to them before the decease of the intestate. (*Kip* v. *Bank of New York,* 10 John. 63.)

The principles upon which the plaintiff bases his right to the appropriation of the specific property have been repeatedly asserted and affirmed in the most maturely considered cases. In *Moses et al.* v. *Murgatroyd et al.* (1 John. Chan. 128,) Chancellor Kent held that the holders of certain promissory notes were

9

entitled to the proceeds of a cargo assigned by the maker to the indorser as security against his indorsements; that the property was held by the indorser in trust for the payment of the notes, and the proceeds in the hands of his Administrator were not assets for the general creditors of the intestate, but were subject to the same trust, and specifically liable to appropriation to the payment of the notes.   In that case it does not appear that the holders had any knowledge of the assignment to the indorser, when the notes were taken, but before their maturity the maker became insolvent, and the indorser, on being charged by due notice of protest, assured the holders that the notes should be paid out of the property assigned so soon as the ship containing the cargo arrived; and relying upon this assurance, the holders forbore to sue.   The assignment was absolute on its face, and the Chancellor, after concluding that it was intended as security, said : "This being the case, the plaintiffs, as holders of the notes, are entitled to the benefit of this collateral security, given by their principal debtor to his surety; and the case of *Maure* v. *Harrison,* (1 Eq. Ab. 93, K. 5 Mich. 1692,) is directly to this point.   These collateral securities are in fact, trusts created for the better protection of the debt; and it is the duty of this Court to see that they fulfill the design.   And whether the plaintiffs were apprised, at the time, of the creation of this security, is not material.   The trust was created for their benefit, or for the better security of the debt, and when it came to their knowledge, they were entitled to affirm the trust, and to enforce its performance.   This was the principle assumed in the case of *Neilson* v. *Blight* (1 John. Cas. 205)."

In *Burn* v. *Cavalho,* (4 Mylne & Craig, 690,) Lord Cottenham decided that directions by a debtor upon his agents to apply property in their hands belonging to him, to the discharge of his liabilities to a creditor, in pursuance of an agreement to that effect, gave the creditor a right in equity to have the property thus applied, notwithstanding the debtor had become bankrupt before the directions had reached his agents, and a commission had issued.   To the same effect is the decision in *Clark* v. *Mauran,* (3 Paige, 373.)   In that case the debtor had sent orders to his agents in Caracoa to sell out his goods remaining in their hands, and to ship the balance of his funds in doubloons to the

defendant.   Soon after this, the debtor, in answer to an applica-
tion for payment, informed the defendant of the orders forwarded
to his agents, and requested him to place the funds, when re-
ceived, to his credit on account.   The doubloons were shipped
and consigned to the defendant, and the bill of lading given to
the Captain of the vessel; but, before their arrival, the debtor
failed and made a general assignment for the benefit of creditors;
and the question presented was, whether the assignee or the de-
fendant was entitled to them.   The Chancellor held that the
shipment made by the debtor and the delivery of the bill of lad-
ing to the Captain, constituted an appropriation of the property
to the defendant upon which he had a specific lien, not affected
by the general assignment of the debtor; remarking in his opin-
ion, that as the letter, informing the defendant of the order for
the consignment of the property, was written in answer to an
application from him for payment, it was to be presumed that he
acted upon it, and neglected to press his demands to the extent
he would otherwise have done.

The authorities cited, establish clearly the equitable right of
the plaintiff to the proceeds in the hands of the Administrator
for the payment of his demand.   The fact that the proceeds
were not in existence at the time of the agreement, does not
affect the question.   The agreement took effect as an assign-
ment in equity so soon as any surplus existed.   The right of the
plaintiff to the appropriation of the funds then attached.   The
case of *Field* v. *Mayor of New York*, (2 Selden, 179,) sustains the
doctrine that equity will uphold assignments—not only of choses
in action, but of contingent interests and expectations, and of
things which have no present actual existence, but rest in possi-
bility, provided they are fairly made, and are not against public
policy; and an agreement for such interests will take effect as
such assignment when the subjects to which they refer have
ceased to rest in possibility, and have ripened into reality.   (See
Leading Cases in Equity, vol. 2, Hare & Wallace's Notes.)

I have thus far treated the first conveyance as a mortgage.   If
not such, the inquiry as to the proceeds of the farm was useless.
If the conveyance were absolute, transferring the title in fee-
simple, as on its face it purports to be, the proceeds were the
property of the grantee, not subject, in any particular, to the

disposition of the grantors. Whether, then, the conveyance is to be regarded as a mortgage is material to the claim asserted by the plaintiff, and whether it can be so regarded depends upon the admissibility of parol evidence to show the purpose of the conveyance. I leave out of consideration the proceedings of the Probate Court, taken on the petition of the Administrator, in relation to the cl ims of Hutchinson and Greene, as it is objected that the settlement there made was by way of compromise, and that no admission can be properly inferred from them against the general creditors of the estate for whose benefit the defense is made. I pass over, also, the answer, which is not under oath, as it is asserted that the case was tried upon agreement that the answer should be taken as a full and specific denial of each allegation of the complaint. I place the question whether the conveyance is to be deemed a mortgage, entirely, upon the admissibility of parol evidence to establish the fact. The evidence in the record, if admitted, clearly establishes it. The question as to the admissibility of such evidence came before this Court in *Lee* v. *Evans*, (8 Cal. 424,) and it was there held that it was inadmissible except in cases of fraud, accident, or mistake, in the creation of the instrument, and the doctrine there asserted was affirmed by Mr. Justice Burnett in *Low* v. *Henry* (9 Cal. 538). At the time I took my seat on the bench, there were several cases pending before the Court in which I had appeared as counsel, and, of course, I was precluded from participating in their decision or expressing any dissent therefrom. *Lee* v. *Evans* and *Low* v. *Henry* were among the number. Both of these cases were decided in favor of the parties I represented, but upon other grounds than those arising from the admissibility of parol evidence.

In *Johnson* v. *Sherman*, decided at the July Term, 1858, the same question was again presented, and I took the occasion to give, in a separate opinion, the reasons of my dissent from the doctrine announced in *Lee* v. *Evans*. A rehearing having been granted, and a change on the bench having since taken place, and Mr. Justice Baldwin concurring with me, I avail myself of this opportunity to re-affirm the views I then expressed, using substantially the language of my dissenting opinion in *Johnson* v. *Sherman*, trusting thereby to place the doctrine of this Court in

harmony with the received doctrine of Courts of Equity, on this subject, everywhere else.

I consider parol evidence admissible in equity, to show that a deed absolute upon its face was intended as a mortgage, and that the restriction of the evidence to cases of fraud, accident, or mistake, in the creation of the instrument, is unsound in principle and unsupported by authority.

The entire doctrine of equity, in respect to mortgages, has its origin in considerations independent of the terms in which the instruments are drawn. In form, a mortgage in fee is a conveyance of a conditional estate, which, by the strict rules of the common law, became absolute upon breach of its conditions. But, from an early period in the history of English jurisprudence, Courts of Equity interposed to prevent a forfeiture of the estate and gave to the mortgagor a right to redeem, upon payment within a reasonable time, of the principal sum secured, interest and costs. As the right to thus recover the estate forfeited arose not from the terms of the instrument, but from a consideration of the real character of the transaction, as one of security and not of purchase, it could be enforced only in equity, and was hence termed an equity of redemption. And when the right to redeem had been once established, to prevent its evasion, the rule was laid down and has ever since been inflexibly adhered to, that the right is inseparably connected with the mortgage, and cannot be abandoned or waived by any stipulations entered into between the parties at the time, whether inserted in the instrument or not. (*Vernon* v. *Bethell*, 2 Eden, 113; Butler's Note to Coke on Litt. 2046; 4 Kent, 142—144; Story's Equity, Sec. 1019).

As the equity upon which the Courts act arises from the real character of the transaction, it is of no consequence in what manner this character is established, whether by deed or other writing, or by parol. Whether the instrument, it not being apparent on its face, is to be regarded as a mortgage, depends upon the circumstances under which it was made, and the relations subsisting between the parties. Evidence of these circumstances and relations is admitted, not for the purpose of contradicting or varying the deed, but to establish an equity superior to its terms. It is against the policy of the law to allow irredeemable

mortgages, just as it is against the policy of the law to allow the creation of inalienable estates. Under no circumstances will equity permit this end to be effected, either by express stipulation, or the absolute form of the instrument. The rule which refuses the admission of parol evidence to contradict or vary written in-- struments, is directed to the language employed by the parties. That language cannot be qualified, but must be left to speak for itself. The rule does not exclude an inquiry into the objects and purposes of the parties in executing the instruments. It may- be shown, for instance, that a deed was made to defraud credi- tors, or a release given to render a witness competent. The purposes and objects of the parties are considered by a Court of Chancery, and constitute a large ground of its jurisdiction, which will be exercised to restrain or to effectuate them, as may best promote justice. Thus, a deed executed for a fraudulent pur- pose will be set aside; and as it is the settled policy of equity, admitting of no departure, never to permit a security to be con- verted by any contemporaneous agreement into a sale, the pur- poses of the parties in giving and taking an absolute conveyance will be inquired into; and when the rights of third persons have not intervened, a Court of Chancery will control the use of the instrument intended as security in the hands of the grantee, so as to effectuate its object. Unless parol evidence can be admit- ted, the policy of the law will be constantly evaded. Debtors, under the force of pressing necessities, will submit to almost any exactions for loans of a trifling amount, compared with the value of the property, and the equity of redemption will clude the grasp of the Court, and rest in the simple good faith of the cred- itor. A mortgage, as I have observed, is, in form, a conveyance of a conditional estate, and the assertion of a right to redeem from a forfeiture, involves the same departure from the terms of the instrument, as in the case of an absolute conveyance execu- ted as security. The conveyance upon condition, by its terms, purports to vest the entire estate upon the breach of the condi- tion, just as the absolute conveyance does in the first instance. The equity arises and is asserted, in both cases, upon exactly the same principles, and is enforced without reference to the agree- ment of the parties, but from the nature of the transaction to which the right attaches, from the policy of the law, as an insep- arable incident.

In *Lee* v. *Evans*, the majority of the Court appear to have overlooked, in their anxiety to preserve the integrity of conveyances from attacks by parol, the distinction between evidence of facts raising an equity which will control the operation of the instrument in the hands of the grantee, and evidence to contradict or vary the legal effect of its terms, and yet that distinction is the foundation of the entire equitable doctrine of mortgages.

Fraud, accident, and mistake, are special grounds of equity jurisdiction, and may be shown by any satisfactory evidence, written or verbal, with reference not merely to mortgages, but to all written instruments. From their nature they must generally be established by parol evidence. And the evidence is admissible, not for the purpose of contradicting or varying the terms of the instrument—not to make its language mean one thing, when it speaks another, but to show a state of facts *dehors* the instrument, raising an equity, which a Court of Chancery will enforce by annulling or reforming the instrument, or limiting its operation, or enjoining its use. And the doctrine is both novel and startling which restricts, in matters of fraud, its jurisdiction over the operation of written instruments, to those cases where the fraud has been committed in their creation. If maintained, it will sweep away its heretofore admitted jurisdiction in an infinite variety of cases, of almost daily occurrence, where the fraud alleged consists in the use of instruments, entered into upon mutual confidence between the parties. Fraud in their use, is as much a ground for the interposition of equity, as fraud in their creation. There is no distinction in the principle upon which the jurisdiction is asserted in the two cases. In both there is the same abuse of confidence, and from both the same injury results.

In *Hultz* v. *Wright*, the Supreme Court of Pennsylvania said: "As to fraud, it is not supposed to be necessary to have proof express that a writing has been obtained fraudulently, in order to admit parol evidence against it on that score; but parol evidence may be admitted to resist the fraudulent use of a writing in the obtaining of which no fraud can be made to appear." (16 Seargt. & Rawle, 346.) And in *Oliver* v. *Oliver*, (4 Rawle, 144,) the same Court said: " When the fairness of the transaction is impeached, it is immaterial whether the party intended a fraud

at the time of the contract, or whether the fraud consists in the fraudulent use of the instrument. * * * It is no answer to say that the parol evidence is in oposition to the deed; for where there is fraud, or the party attempts to make a fraudulent use of an instrument, contrary to his contract, parol evidence is admitted to prevent injustice."

"A deed," says Kent, "absolute upon the face of it, and though registered as a deed, will be valid and effectual as a mortgage as between the parties, if it was intended by them to be merely a security for a debt. And this would be the case, though the defeasance was by agreement resting in parol, for parol evidence is admissible in equity, to show that an absolute deed was intended as a mortgage, and that the defeasance has been omitted, or destroyed by fraud, surprise, or mistake." (4 Com. 143.) And Mr. Justice Story, after quoting this passage, adds: "It is the same if it be omitted by design, upon mutual confidence between the parties, for the violation of such an agreement would be a fraud of the most flagrant kind, originating in an open breach of trust against conscience and justice. I do not comment upon this subject at large, because it seems to me wholly unnecessary, in the present state of the law, to do more than enunciate the principles which govern cases of this nature, and which are as well established as any which govern any branch of our jurisprudence." (*Taylor* v. *Luther*, 2 Sumner, 233.)

And if authority is to govern, the concluding observations of Mr. Justice Story are correct beyond all question. For the last one hundred years parol evidence has been held admissible to show that an absolute conveyance was intended as a mortgage. In those tribunals to whose adjudications we are accustomed to look for authoritative expositions of the law, the doctrine is at rest. It prevails in England and in the Supreme Court of the United States; it is held in New York, from which our Statute of Frauds is almost literally copied; it is maintained in the eastern States, except as modified by statutory enactments as to the equity jurisdiction of the Courts; it is the law in Virginia, in the Carolinas, in Alabama, Tennesee, Ohio, Indiana, and Illinois, and, I have no doubt, in other States.

In the case of *Taylor* v. *Luther*, cited above, there was no alle-

gation of fraud, accident, or mistake, in the creation of the deed, and yet parol evidence was held admissible to show that the instrument was intended as a mortgage, and a decree allowing a redemption was granted.

In *Van Buren* v. *Olmstead*, (5 Paige, 10,) the allegation of fraud contained in the bill was not sustained, but Chancellor Walworth held that parol evidence could be received to show that the conveyance was intended as security. "It is now well settled," he says, "that parol evidence is admissible to show that a deed, absolute in its terms, was intended by the parties as a mortgage, or security for the payment of money merely."

In *Hodges* v. *The Tennessee Marine and Fire Insurance Co.* (4 Selden, 416,) the Court of Appeals of New York held the parol evidence admissible. In that case, there was no pretense of any fraud, accident, or mistake, either in the creation or use of the instrument. "From an early day," said the Court, "the admissibility of such evidence had been established as the law of our Courts, and it is not fitting that the question should now be reexamined." (*Strong* v. *Stewart*, 4 J. C. 167; *Whittick* v. *Kane*, 1 Paige, 206.)

In *Miami Exporting Company* v. *Bank of the United States*, (Wright, 252,) the Supreme Court of Ohio said: "It is now the acknowledged doctrine that parol evidence is admissible against the face of a deed, to show that a mortgage only was intended. And whether a conveyance be a mortgage or not, is determined by its object. If given as a security, it is a mortgage, whatever may be its form. This is so whether the condition of defeasance form a part of the deed, is evidenced by other writing, or exists only in parol. The fact of its being given as security determines its character, not the evidence by which the fact is established."

In *Miller* v. *Thomas et al.* (14 Ill. 431,) Caton, J. of the Supreme Court of Illinois, says: "It is by no means necessary, in order to constitute a mortgage, that the deed and defeasance should be contained in the same instrument, or that they should even refer to each other. Their connection may be shown by parol. Indeed, it is not absolutely necessary that the defeasance should be in writing at all. The conveyance may be absolute on its face, and yet it may be shown by parol that it was in-

tended only as a security for the payment of money, when it will be treated in equity as a mortgage. These principles are too familiar to require authorities for their support."

In a great number of the adjudged cases in which parol evidence has been held admissible, special circumstances of fraud, accident, or mistake, have existed, and are referred to as distinct grounds for equitable relief. Yet, it is no less well settled that the evidence is admissible in the absence of such circumstances. The jurisdiction of equity is asserted upon the admission of the parties to the character of the transaction, either by pleadings or otherwise, and even against their express denial, upon clear and decisive proof. (*Conwell et al.* v. *Evill*, 4 Blackford, 67 ; *Franklin* v. *Roberts*, 2 Iredell's Eq, 564 ;) and even where a disposition has been manifested to restrict the jurisdiction to cases in which the elements of fraud or undue advantage are mingled, it is held, with few exceptions, sufficient to authorize a decree for relief, that the proof of the fraud consists in the attempt of the grantee to appropriate the conveyance to his own use.

Thus, in *Wright* v. *Bates & Niles*, the Supreme Court of Vermont, says : "It is well settled law in this State, that a Court of Chancery will treat an absolute deed of real estate, given to secure the payment of a debt, as a mortgage, as between the immediate parties, especially if the grantor continues to remain in possession, though the defeasance rests wholly in parol. When there is an attempt to set up such an instrument as an absolute conveyance, there is a fraudulent application or use made of it; and this is a proper ground on which chancery may proceed." (13 Vermont, 348.)

In *Morris* v. *Ex'r of Nixon*, (1 How. 126,) Mr. Justice Wayne, of the Supreme Court of the United States, says : "The charge against Nixon is substantially a fraudulent attempt to convert that into an absolute sale which was originally meant by himself and the complainant to be a security for a loan. It is in this view of the case that the evidence is admitted, to ascertain the truth of the transaction, though the deed be absolute on its face."

In *Strong* v. *Stewart*, (4 Johns. 167,) the deed was absolute on its face, but it was proved against the express denial of the answer of the grantee to have been executed as security for a loan, and not

upon a purchase and sale. And Chancellor Kent said: "On the strength of the authorities, and on the proof of the loan, and of the fraud on the part of the defendant in attempting to convert a mortgage into an absolute sale, I shall decree an existing right in the plaintiffs to redeem."

The parol evidence is admitted, as I have already observed, not for the purpose of contradicting or varying the written instrument, but to show facts *dehors* the instrument creating an equity superior to its terms. The same rule prevails in the admission of parol evidence in equity to establish resulting or implied trusts. Where one party purchases an estate with the money of another, and takes the conveyance in his own name, a trust in favor of the latter results by implication of law without any agreement on the part of the nominal grantee. Such trust may be proved by parol evidence even in the absence of fraud, and against the positive denial of the grantee. "Irrespective of any allegation of fraud," says Greenleaf, "it has been settled upon great consideration that parol evidence is admissible to prove that the purchase money for an estate was paid by a third person other than the grantee named in the deed in order to establish a trust in favor of him who paid the money." (Evidence, vol. 1, 365; *Boyd* v. *McLean*, 1 Johns. Ch. 582.)

The evidence is received not in contradiction of the deed; on the contrary, the legal effect of its terms is admitted, but to show the source of the consideration. The trust arises from the fact appearing, *dehors* the instrument, that the money advanced by the real, and not the nominal purchaser, constituted the consideration of the purchase, just as the equity in the case of an absolute conveyance arises from the fact appearing, *dehors* the deed, that it was executed as security for a debt. In neither case is it attempted to vary the language of the conveyances, but to prevent an inequitable advantage being taken from their terms.

In *Lee* v. *Evans*, the complaint alleged a loan to the defendant, for a certain period, at a stipulated interest, and the execution of the absolute conveyance as security for the payment of the sum, but contained no averment of fraud, accident, or mistake, in the creation of the instrument, or any attempted fraud in its use. The answer did not specifically deny the allegations of the complaint, but insisted that the conveyance was to operate as a con-

ditional sale, the premises to be reconveyed provided payment of the money, when due, with interest, was made, but otherwise, that the title was to remain perfect in the plaintiff. Upon the want of a specific denial, and the averments of the answer, the transaction was held to be one of loan and not of purchase, and the relief prayed for was decreed. In other words, upon the admission, by the pleadings, of the character of the transaction, the deed was treated as a mortgage.

It is difficult to perceive the consistency of the judgment with the reasoning of the opinion. The admission by the pleadings only established for the purposes of the suit, the truth of the facts stated. Those facts might have been proved with equal certainty by evidence. Written evidence not being by deed or conveyance, is as much in contravention of the language of the statute as oral evidence. The statute reads: "No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by *deed or conveyance in writing,* subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing." Admissions, whether contained in pleadings or established by competent proof, do not constitute "a deed or conveyance in writing." The answer in *Lee* v. *Evans* contained no admission of the execution of any such deed or conveyance, but only of the character of the original transaction as one of loan and not of purchase.

The judgment of the Court in *Lee* v. *Evans,* as to the effect of the admissions by the answer, is undoubtedly correct; but it is not warranted by the opinion. It must rest upon the equity which arises from the nature of the transaction, when that transaction is admitted by the parties, and it follows that such equity must arise when the transaction is clearly established by other evidence than admissions.

Since the opinion containing the views here repeated was rendered, my attention has been called to the separate opinion of Mr. Justice Burnett, in *Arguello* v. *Edinger,* (10 Cal. 160,) in which he again re-affirms the doctrine announced in *Lee* v. *Evans.*

In the case of *Arguello* v. *Edinger,* the only questions which arose were: 1st, whether, under the statute of frauds, of this State, Courts of Equity possessed any power to decree a specific performance of a verbal contract for the sale of land, in case of part performance; and 2d, if they possessed the power, whether the acts detailed in that case constituted such part performance as to justify its exercise. A discussion of the admissibility in equity of parol evidence, to show that a deed, absolute on its face, was intended as a mortgage, was irrelevant to those questions. The reasoning of the learned Justice on a point thus outside of the case, has not induced any qualification of the views expressed in *Johnson* v. *Sherman,* or created a doubt of their entire soundness.

The parol evidence being admissible, and clearly establishing the fact that the conveyance was intended only as security, Hutchinson & Greene were entitled to redeem the property, and to insist upon a reconveyance after its proceeds had satisfied their indebtedness to Frierson, and to make any disposition they thought proper of the surplus.

It only remains to add, that the judgment of the Court below must be reversed, and that Court directed to enter a decree declaring that the plaintiff is entitled to the application of the funds in the hands of the Administrator, which are the proceeds of the produce of the farm, to the payment of his demand, and directing the same to be made.

Ordered accordingly.