[Civ. No. 4890. Third Appellate District.—June 23, 1933.]

OXNARD SCHOOL DISTRICT, Plaintiff, v. G. E. PENN et al., Defendants; JARRETT BECKETT, Intervener and Appellant; PEOPLES LUMBER COMPANY (a Corporation), Respondent.

Jarrett Beckett and E. W. Howell for Appellant.

Blackstock & Rogers for Respondent.

PLUMMER, J.—This action was begun by the Oxnard School District for the purpose of determining to whom the balance of a fund in its possession should be paid. The money on hand was deposited in court.

So far as this appeal is concerned, there is a controversy only between Jarrett Beckett, as appellant, and Peoples Lumber Company, a corporation, as respondent, and for purposes of convenience, Beckett will be referred to as the appellant, and the Peoples Lumber Company, a corporation, as respondent.

In April, 1929, G. E. Penn, a contractor, entered into a contract with the Oxnard School District of Ventura County, for the construction of a school building for the agreed price of $63,206.90. The contractor's bond was written by the Southern Surety Company under an arrangement with the Peoples Lumber Company whereby the latter agreed to save the surety harmless from any claims said lumber company might have for materials furnished in connection with the work. The contract was finished in September, 1929; notice of completion was filed on October 14 or 15, 1929. At that date all of the contract price had been paid save and except a balance of $15,871.72. · On October 30, 1929, the defendant Woodhead Lumber Company, a judgment creditor of the contractor, filed with the auditor of Ventura County an affidavit and transcript of judgment showing a judgment against the contractor for the sum of $716.85. On October 31, 1929, G. E. Penn, the contractor, signed and delivered to R. B. Haydock, secretary to the board of the Oxnard School District, an order requesting the delivery of the warrant for the balance due on account of the erection of the school building to the Peoples Lumber Company. The record shows that thereafter an order was given to the Bank of Italy of like import, this order being dated October 30, 1929; but it satisfactorily appears from the testimony set forth in the record that this order was signed at a later date than the one given to the Peoples Lumber Company, as at the time of giving the order to the Bank of Italy, the presi-

dent of the bank was informed of a previous order given to the Peoples Lumber Company, and that the Peoples Lumber Company had the sole right to the fund coming to the contractor after the payment of certain claims for labor. The judgment of the Woodhead Lumber Company having been filed as provided by law, at a date prior to the order given by Penn to the Peoples Lumber Company, the court awarded judgment to the Woodhead Lumber Company for the amount of its claim, and gave the Peoples Lumber Company judgment for the balance due on the contract price for the erection of the school building in the sum of $6,368.98.

On April 7, 1930, the appellant having obtained a judgment against Penn in the sum of $7,085.30, filed a transcript and affidavit under the provisions of section 710 of the Code of Civil Procedure with the auditor of Ventura County. This suit having been begun by the Oxnard School District to determine to whom the fund should be paid, the appellant filed a complaint in intervention.

The court found that the order hereinafter set forth given by G. E. Penn to the respondent constituted an equitable assignment of the balance due, and awarded judgment accordingly. The right of the parties to the fund involved in this action depends upon whether the transaction set forth constituted an equitable assignment as found by the court. The instrument signed by G. E. Penn is in the following words and figures:

"October 31, 1929.

"Mr. R. B. Haydock,
    "Oxnard, Cal.
"Dear Sir—

"When you secure a properly executed warrant for settlement of the balance due me on the Woodrow Wilson school job, deliver said warrant to the Peoples Lumber Co., Ventura, and I will endorse the same over to said Peoples Lumber Co. in payment for materials furnished.

"(Signed)   G. E. PENN."

The testimony of R. B. Haydock, the superintendent of schools of Ventura County, who also acted as secretary for the clerk of the school board, is as follows: "I recall the order, 'Peoples Lumber Company exhibit 1'. Mr. Penn came into my office on October 31, 1929, with Mr. Cleale, and said he would like to write out an order for delivery of the

balance due him on the contract to the Peoples Lumber Company. Mr. Cleale sat down at a desk and wrote the order out, and Mr. Penn signed it. The amount due the contractor at that time, under the contract, was the 25 per cent which is held back under the terms of the contract for 35 days after completion of the work. There were several stop notices filed in the auditor's office against the balance due. The order made out by Penn in favor of the Bank of Italy, and dated October 30, 1929, was received from the bank around November 16, 1929, through the mail. I acknowledged it on the 19th.'' The witness further testified that no official action was taken by the board in relation to the assignment.

The record further shows that the contractor made no further claim to the balance due on the contract after the delivery of the assignment to the Peoples Lumber Company. The record indicates that the Bank of Italy abandoned all claim to the fund.

The contractor Penn testified in relation to the order given the Bank of Italy as follows: ''Lagomarsino, president of the bank, came to me with the order already written and said, 'Sign that, will you.' I said, 'Well, now, I don't know about this. The money that is left belongs to the Peoples Lumber Company. I will sign it but you will have to fight it out with the Peoples Lumber Company.''' Which, standing uncontradicted, shows that the Bank of Italy was advised that the fund had already been assigned to the Peoples Lumber Company, and that it acquired nothing by the transaction just set forth.

Upon this appeal it is contended that no equitable assignment is shown, principally by reason of the fact that the school board did not take any action in relation to the assignment, and that the assignment being for the balance of the fund, instead of for a specific sum, cannot be given effect, and that it remained for the contractor to sign the warrant which he had directed to be delivered to the Peoples Lumber Company.

While a number of cases dealing with equitable assignments have to do with instances where the whole of the fund has been assigned, and language used which indicates that it is necessary that the assignment cover the whole fund, and that there be a specific mention of the amount of

money assigned, such, however, does not appear to be the prevailing rule in this state.

In *Baumgarten* v. *California Pacific Title & Trust Co.,* 127 Cal. App. 649 [16 Pac. (2d) 332] (hearing denied by the Supreme Court), the District Court of Appeal for the First District, in a rather elaborate opinion dealing with a partial assignment of a fund, announced the rule in this state as follows: "The above order, being one for the payment to respondent of a part only of the whole fund due the drawer, and never having been accepted by the drawee, cannot be said to constitute a legal assignment, *pro tanto,* of the obligation due the Blackmore Investment Company, or of any part thereof (citing a number of cases). However, it has been repeatedly held that where an order, such as the one at bar, is given for a valuable and adequate consideration, and with the intent to effect an assignment, it will, as between the payee and the drawer, operate as an equitable assignment, taking precedence over subsequent assignments and judgment liens. (*Wheatley* v. *Strobe & Wilcoxson,* 12 Cal. 92 [73 Am. Dec. 522]; *Pierce* v. *Robinson,* 13 Cal. 116; *Pope* v. *Huth,* 14 Cal. 403; *Curtner* v. *Lyndon,* 128 Cal. 35 [60 Pac. 462]; *McIntyre* v. *Hauser,* 131 Cal. 11 [63 Pac. 69]; *Fidelity Sav. etc. Assn.* v. *Rodgers,* [180 Cal. 683, 182 Pac. 426], *supra; Dunlap* v. *Commercial Nat. Bank,* 50 Cal. App. 476 [193 Pac. 688].)"

In *Wheatley* v. *Strobe,* 12 Cal. 92 [73 Am. Dec. 522], the want of acceptance of the order by the drawee was held only to affect the form of the action that could be maintained by the payee, and in doing so used the following language: "The want of a written acceptance does not affect the right of Howel to the money due, but only the mode of enforcing it. With the acceptance he could have sustained an action upon the order; without it he must recover upon the original demand by force of the assignment. Under the old common-law practice, the action could only be maintained in the name of the assignor for the benefit of the assignee, but under our system it may be brought in the name of the assignee as the party beneficially interested. Courts of law, equally with courts of equity, gave effect to assignments, like the one under consideration, by controlling the proceeds of the judgments recovered for the benefit of the assignee." (Citing cases.)

In *Goldman* v. *Murray*, 164 Cal. 419 [129 Pac. 462], the court had before it the question of an equitable assignment of a part of a debt and ruled as follows: "In order to constitute an equitable assignment of a debt, no express words to that effect are necessary. If, from the entire transaction, it clearly appears that the intention of the parties was to pass title to the chose in action, then an assignment will be held to have taken place." And then the distinction between the right of action where there has been an acceptance and a nonacceptance is clearly set forth: "The holder of the bill or order cannot sue the drawee-at-law in his own name, as he would thus divide the cause of action and leave a balance due the creditor. He cannot sue in the creditor's name, except by his consent, as, at best he is only entitled to a part of the debt due him. But it has been held in numerous cases, and we think should now be regarded as law, that a nonnegotiable order for part of a fund operates as an equitable assignment *pro tanto*. Clearly this is the case when it has been accepted, or assented to by the drawee. And when it has not been accepted, our own view is this: that a nonnegotiable order for part of a fund does operate as an equitable assignment *pro tanto* as between the drawer and payee, because obviously so intended."

See, also, 3 California Jurisprudence, page 274, where the text, supported by numerous authorities, is as follows: "While the rule is well settled that a creditor cannot split his claim against a debtor, and by assignment of a portion thereof impose upon the debtor, without his consent, the legal obligation to pay the same, courts of equity, however, have long been accustomed to recognize and enforce the rights of partial assignees of choses in action although the debtor has not consented to the assignment. In such a case the partial assignee has the right to bring all the parties before the court and have his rights under the assignment determined. And so, as between the parties to the assignment a nonnegotiable order for part of a particular fund or debt operates as an equitable assignment *pro tanto*, and the consent of the debtor is not necessary to the validity of such an assignment."

See, also, *Title Ins. & Trust Co.* v. *Williamson*, 18 Cal. App. 324 [123 Pac. 245], where the question of an equitable assignment was involved, and the rules of law set forth as

we have stated herein, and further holding that no particular form of words are necessary to constitute an equitable assignment if the intent of the parties to that effect is clearly shown.

In *Los Angeles City School District* v. *Tucker*, 99 Cal. App. 390 [278 Pac. 507], this court had before it for consideration an order held to constitute an equitable assignment in view of the intention of the parties shown by the record, and in considering the question, held that the form of the order was immaterial if the intention of the parties was satisfactorily shown by the record. The notice or order in the case just referred to is strikingly similar to the order in the instant case, as will be readily seen as we consider its terms, which are as follows:

"Los Angeles, Cal., May 20th, 1925.

"Mr. C. F. Lenz, Auditor,

"L. A. Board of Education.

"Dear Sir:

"I hereby authorize you to deliver my warrant for the sum of $574.50, which is the 35-day payment for alterations to the old building at the Normandie Avenue School-house, to Patten & Davies Lumber Co., this money being due them for material supplied by them for above mentioned work; said payment being due June 5th, 1925; when said warrant is ready for delivery I will endorse same to Patten & Davies at your office. Please notify me.

"LEWIS TUCKER, Contractor."

In view of the holding had by this court in the Tucker case, *supra*, we find no escape from the conclusion that the assignment in the instant case must be held sufficient to transfer the fund to the respondent Peoples Lumber Company, a corporation.

Other minor questions are presented for consideration upon appeal, but in view of what we have stated, it is evident that the judgment must be affirmed. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.